861 P.2d 611

Ilona SCHAEFFER aka Ilona Schaeffer-Cronk, a married woman dealing with her sole and separate property, Plaintiff/Appellant,

v.

Michael L. CHAPMAN and Bonnie L. Chapman, husband and wife; Bonnie L. Chapman, conservator for the estate of Macia Chapman and Jenifer Chapman, minors; Macia Chapman, a minor and Jenifer Chapman, a minor; Valley Hope Association, a Kansas corporation, Defendants/Appellees,

and

Investors Security Management, Inc., an Arizona corporation, Third Party Defendant/Appellee.

No. CV–92–0327–PR.

Supreme Court of Arizona, En Banc.

Oct. 14, 1993.

Law Offices of David W. Eagle by David W. Eagle, Phoenix, for plaintiff/appellant Schaeffer.

Jaburg & Wilk, P.C. by Alan H. Susman, Jeffrey H. Wolf, Phoenix, for defendants/appellees Chapman.

Elizabeth A. Kolberg, Phoenix, for defendant/appellee Valley Hope Ass'n.

Steven M. Tidmore, Phoenix, for third party defendant/appellee.

OPINION

CORCORAN, Justice.

Ilona Schaeffer (plaintiff) and her husband purchased Wranglers Roost in New River, Arizona in 1981. In 1983, after two years of remodeling, the Schaeffers began operating Wranglers Roost as a guest ranch and restaurant. The business was unsuccessful and did not generate enough income to pay the mortgage. Plaintiff's mother gave her approximately $70,000.00 to help with the mortgage, but plaintiff still had to close the restaurant in 1987. Although her husband and daughter helped pay the mortgage on several occasions after the restaurant closed, plaintiff fell behind in her mortgage payments and the mortgage holder began foreclosure pro-

ceedings. Plaintiff managed to reinstate the loan but remained in financial trouble.

To pay past due mortgage payments, back taxes, and other debts, plaintiff applied for a loan through Colonial Mortgage (Colonial), a licensed mortgage broker. Michael Chapman (defendant), who worked for Colonial, was given the opportunity to fund plaintiff's loan. Using funds from their minor children's estate, Michael Chapman's wife, Bonnie Chapman, as conservator for the estate, funded plaintiff's $78,-000.00 loan. Despite requesting a "significantly larger amount" because of her "substantial equity" in the property, plaintiff accepted the $78,000.00 from Colonial because she was desperate. On May 6, 1988, plaintiff signed a promissory note, which designated Colonial as payee, and a deed of trust, which designated Colonial as beneficiary. Both the promissory note and deed of trust were assigned to defendant Bonnie Chapman, as conservator for the estate of her minor children, on May 12, 1988.

At the time the loan was made, plaintiff "was 55 years old, unemployed, had a $2,452.00 monthly housing expense and no income." The trial court found that "the loan was made even though it appeared plaintiff had no realistic chance of repaying it." Plaintiff's first loan payment was due on July 1, 1988. Predictably, she defaulted. A Notice of Trustee's Sale was recorded July 13, 1988, providing 90 days' notice of the sale scheduled for October 13, 1988. Plaintiff received notice of the default and the trustee's sale through the July 12, 1988 Statement of Breach or Nonperformance of Deed of Trust (Statement of Breach). It reads:

> NOTICE IS HEREBY GIVEN, pursuant to A.R.S. § 33–809(c), that a breach ... has occurred.... Because of this breach or nonperformance, the *Beneficiary has elected to consider all of the principal and interest and any other sums secured by the Deed of Trust immediately due and payable* and *has elected to cause the subject real property to be sold to satisfy the obligation.*

*IMPORTANT NOTICE*

. . . .

YOU MAY HAVE THE RIGHT TO CANCEL THE TRUSTEE'S SALE BY PAYING ALL PAST DUE PAYMENTS AND COSTS, AND BY CURING ALL OTHER DEFAULTS PRIOR TO THE DATE OF THE TRUSTEE'S SALE.

(Emphasis added.) Plaintiff was unable to reinstate her loan and thereby cancel the sale.

Bonnie Chapman purchased plaintiff's property at the trustee's sale on October 13, 1988 for a credit bid of $85,117.00. She then conveyed the property to herself and Michael Chapman by recording a joint tenancy deed on December 13, 1988. Plaintiff filed a *lis pendens* on December 14, 1988, one day before the Chapmans conveyed the property to The Valley Hope Association by warranty deed for $375,000.00. As a result of this sale, Bonnie Chapman received $100,811.16 in her capacity as conservator, and the Chapmans as individuals received $150,000.78. The remainder was used to pay off the first mortgage and other expenses.

Plaintiff filed a complaint on December 14, 1988 alleging, in part, breach of contract and seeking specific performance of the terms of the deed of trust. She argued that the trustee's sale should be invalidated because it occurred in violation of the 30–day notice provided for in the deed of trust. Defendants answered that even though the power of sale was invoked before the time allowed by the notice provision in the deed of trust, the sale was valid because the notice provision need not have been followed. On January 31, 1990, the trial court held that the trustee's sale was valid and granted defendants' motion for summary judgment on that issue. Plaintiff appealed. The court of appeals affirmed the trial court's decision. *Schaeffer v. Chapman*, 1 CA–CV 90–313 (mem. dec. April 30, 1992) (Peter D. Baird, Judge Pro Tempore, dissenting).

We granted review on the following issue:

Should the deed of trust be construed to require a 30–day notice and grace period after a default and prior to recording the statutory Notice of Trustee's Sale?

We hold that it should be so construed. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.-24.

### Discussion

The issue is one of contract construction. The court of appeals held that the deed of trust provision that provided a 30–day notice period during which the borrower could cure the default was subsumed in the 90–day notice period required by A.R.S. § 33–807(C). *Schaeffer*, mem. dec. at 9–10. The dissent concluded that the contract's 30–day notice period supplemented the 90–day statutory period and that the defendants had to comply with both provisions. *See Schaeffer*, mem. dec. at 15. We believe the dissent has the better argument.

■ We strictly construe deeds of trust in favor of the borrower because:

Compared to mortgage requirements, the Deed of Trust procedures authorized by statute make it far easier for lenders to forfeit the borrower's interest in the real estate securing a loan.... The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage.

*Patton v. First Fed. Sav. & Loan Ass'n*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978). We therefore begin by interpreting clause 19 of the deed of trust in the light most favorable to plaintiff. Our interpretation is consistent with the deed of trust's plain language.

■ Clause 19, which contains the 30–day notice provision, reads, in part:

Lender shall *give notice* to Borrower *prior to acceleration* following Borrower's breach of any covenant or agreement in this Security Instrument.... The notice shall specify: ... (c) *a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured;* and (d) that *failure to cure the default on or before*

*the date specified* in the notice *may result in acceleration* of the sums secured by this Security Instrument and *sale of the Property*

....

*If Lender invokes the power of sale,* Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale ... and shall mail copies of the notice as prescribed by applicable law to Borrower.... *After the time required by applicable law ...* Trustee ... shall sell the Property....

(Emphasis added.) This language plainly requires two distinct and consecutive notice periods. Paragraph 1 provides a contractual 30–day notice period during which the borrower may cure the default *before* the lender may accelerate the loan and "invoke the power of sale." If the borrower does not cure the default within this 30–day notice period and lender "invokes the power of sale," then paragraph 2 applies. Paragraph 2, which the court of appeals does not discuss, deals with notice of the trustee's sale. It requires the lender to inform the trustee that the lender wants to sell the property. After receiving this notice, the trustee must record a notice of sale and mail a copy to the borrower. The sale is then allowed "after the time required by applicable law." This provision is the statutory notice period.

The "applicable law" that governs the sale of trust property is A.R.S. § 33–807(C); it reads:

The power of sale of trust property conferred upon the trustee shall not be exercised *before the expiration of ninety days from the recording of the notice of the sale.*

(Emphasis added.) Thus, the additional statutory notice period alluded to in paragraph 2 of clause 19 in the deed of trust is the 90–day period mandated by A.R.S. § 33–807(C).

We read these two paragraphs together as entitling plaintiff to two distinct and consecutive notice periods—one for 30 days

and one for 90 days. The 30–day contractual notice period gives plaintiff the opportunity to cure the default before acceleration can occur and before the power of sale can be invoked. The additional 90–day notice period affords plaintiff the opportunity to reinstate before the sale, effectively allowing plaintiff a total of 120 days to reinstate the loan.

Plaintiff defaulted on her first loan payment on July 1, 1988. On July 12, 1988, the lender signed a Statement of Breach and Notice of Election to sell the property. The following day—July 13, 1988—the trustee recorded a Notice of Trustee's Sale to be held on October 13, 1988. The Statement of Breach informed plaintiff that:

> Because of this breach or nonperformance, the Beneficiary has elected to consider *all of the principal and interest and any other sums secured by the Deed of Trust immediately due and payable and has elected to cause the subject real property to be sold to satisfy the obligation.*

(Emphasis added.)

Plaintiff argued that the terms of the trust deed required the lender to provide 30–day notice before accelerating the loan. The court of appeals rejected this claim, interpreting this provision as giving plaintiff notice of intended future acceleration rather than notice of actual acceleration. The majority reasoned that plaintiff, pursuant to A.R.S. § 33–813, could have reinstated the loan by tendering the delinquent amount anytime before the sale. Because plaintiff received 90 days' notice of the sale and could legally reinstate the loan anytime before the sale, the court of appeals concluded that plaintiff received more notice than the 30 days required by the deed of trust before actual acceleration could occur.

We believe the plain meaning of the notice provision in the Statement of Breach is clear; both the acceleration of the loan and the notice of sale occurred immediately, without the 30–day notice required by the terms of the deed of trust. We agree with the dissenting judge who said:

> [T]he [defendants] ask us to ignore the premature acceleration and sale date in their written notice to [plaintiff] because an Arizona statute made the wrongly proclaimed acceleration legally unenforceable.

Despite defendants' arguments to the contrary, plaintiff was given only 90 days in which to reinstate. By accelerating the loan and noticing the sale without first giving plaintiff the 30–day period to cure the default, and by holding the trustee's sale before 120 days had passed, defendants breached the terms of the deed of trust.

■ In addition to construing the deed of trust in a light unfavorable to the borrower and ignoring its plain language, the court of appeals construed the deed of trust in a manner that favors rather than disfavors forfeiture. We repeatedly have held that contracts will be strictly construed to avoid forfeitures. *See, e.g., Chadwick v. Winn,* 101 Ariz. 533, 421 P.2d 890 (1966); *Harford v. National Life & Cas. Ins. Co.,* 81 Ariz. 43, 299 P.2d 635 (1956); *Glad Tidings Church v. Hinkley,* 71 Ariz. 306, 226 P.2d 1016 (1951). This deed of trust has a common sense meaning that favors the borrower and avoids forfeiture. In light of our precedent and the plain language of the deed of trust, we cannot allow the court of appeals' decision to stand.

### Disposition

We hold that defendants breached their contract with plaintiff by recording the statutory Notice of Trustee's Sale without first allowing plaintiff 30 days within which to cure the default as required by the deed of trust. We therefore vacate the court of appeals' decision and reverse and remand to the trial court for further proceedings consistent with this opinion.

FELDMAN, C.J., MOELLER, V.C.J., and ZLAKET and MARTONE, JJ., concur.