IN THE SUPREME COURT OF THE STATE OF ARIZONA
En Banc

| | | |
|---|---|---|
| In Re: LINDA LORRAINE KROHN, | ) | Arizona Supreme Court |
| | ) | No. CV-01-0246-CQ |
| Debtor. | ) | |
| _____ ) | | United States Bankruptcy Court |
| | ) | No. 00-10623-PHX-RTB |
| LINDA LORRAINE KROHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SWEETHEART PROPERTIES, LTD. an | ) | **O P I N I O N** |
| Arizona Corporation; CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | | |

Certified Question from
United States Bankruptcy Court for the District of Arizona
The Honorable Redfield T. Baum, Judge

QUESTION ANSWERED

Allen D. Butler                                                                                          Tempe
Attorney for Linda Lorraine Krohn

David L. Knapper                                                                                     Phoenix
Attorney for Sweetheart Properties, Ltd.

Miles & Associates, L.L.P.                                                                      Las Vegas
        By:     Jeremy T. Bergstrom
Attorneys for Citimortgage, Inc.

Jaburg & Wilk, P.C.                                                                                Phoenix
        By:     Kathi M. Sandweiss
                  Lawrence E. Wilk
                  Roger L. Cohen
Attorneys for Amicus Curiae
Arizona Trustee Association, Inc.

FELDMAN, Justice

¶1        Linda Lorraine Krohn (Krohn) filed a chapter 13 bankruptcy petition that was dismissed. Shortly after that dismissal, her home was sold to Sweetheart Properties, Ltd. (Sweetheart) at a trustee's sale conducted under authorization of a deed of trust. She filed a second bankruptcy petition seeking to have the sale of her home vacated for gross inadequacy of price. Bankruptcy Judge Redfield T. Baum certified a question of Arizona law to this court: "May a trustee's sale of real property [under a deed of trust] be set aside solely on the basis that the bid price was grossly inadequate?"

## JURISDICTION

¶2        Sweetheart argues that we lack jurisdiction. Our jurisdiction to accept a certified question from a United States bankruptcy judge was settled by our recent decision in *In re PriceWaterhouse Ltd. v. Decca Design Build, Inc.*, in which we held that A.R.S. § 12-1861 gives us jurisdiction to accept certified questions from federal bankruptcy courts. 202 Ariz. 397, 398 ¶ 1, 46 P.3d 408, 409 ¶ 1 (2002). "[T]he intent of the statute as it currently exists, coupled with our own supreme court rule allowing certification of questions from *federal* and tribal courts, sufficiently provides this court with the discretionary authority to answer the bankruptcy court's certified question. Ariz. S.Ct. R. 27(a)(1); *see also* 28 U.S.C.A. § 151 (1993) (bankruptcy judges constitute 'a unit of the district court.')." *Id*. (emphasis in original).

¶3        Thus, we accepted jurisdiction. We answer the certified question in the affirmative.

## FACTS

¶4        The facts of this case were well described by Judge Baum. The following facts are relevant to our disposition and are quoted from his minute entry of March 31, 2001:

> The facts before the court are undisputed. Debtor filed this case on September 29, 2000. The debtor was in default on the payments on her home and her lender scheduled a trustee's sale. Prior to the scheduled sale, the debtor filed her first Chapter 13 case on February 27, 2000. That case was dismissed on August 28, 2000 because she had not com-

2

plied with certain requirements in her Chapter 13 case. Prior to the dismissal, the lender moved for stay relief. In its motion, the lender stated that a trustee's sale "was originally scheduled for Jule 15, 2000 and that the Trustee's Sale was postponed and will be postponed from time to time, pending authorization from this Court that such Sale may take place." Debtor filed a response and contested the motion for stay relief.

On or about September 24, 2000, the debtor receive a letter from her lender, which stated in part:

> "The mortgage for the property in which you are living is about to be foreclosing (sometimes referred to as repossessed). We expect that ownership of the property will be transferred to _____ probably within the next 60 to 90 days."

In fact, the trustee's sale was held on September 27, 2000. The amount paid at that sale was $10,304.00 by Sweetheart Properties, LTD, an Arizona corporation ("Sweetheart"). Sweetheart was a purchaser who bought in good faith and without any notice about the dealings between the debtor and her lender, including the letter described above.

The debtor states that her residence is worth at least $57,500.00 and no other evidence of value has been presented to the court by the parties. The foregoing facts are compounded by the fact that debtor is disabled and resides in the residence with her two daughters.

¶5      In the present case the winning (and only) bid was slightly more than $10,000 for a property worth $57,000. Judge Baum found "the price paid is not merely inadequate but under applicable case law 'grossly' inadequate because the price was less than 20% of fair market value . . . ." Our analysis of the question certified is informed by Judge Baum's finding that the price paid was *grossly* inadequate.

## DISCUSSION

A.      **Judicial foreclosure**

¶6      Sales in actions to foreclose mortgages are subject to judicial review for substantive fairness as well as for procedural compliance. Thus, it is well established that such sales can be overturned based on price alone. "Where a grossly inadequate price is bid, such as shocks one's conscience, an equity court may set aside the sale, thus insuring within limited bounds a modicum of protection to

a party who has absolutely no control over the amount bid and this, in effect, insures that the foreclosed property is not 'given away.'" *Nussbaumer v. Superior Court*,107 Ariz. 504, 507, 489 P.2d 843, 846 (1971).

**¶7**     But this does not apply to bids that are merely *inadequate* when compared to the fair market value of the property. As our court of appeals has explained, the rule has a long history in this state:

> Since the case of *McCoy v. Brooks*, 9 Ariz. 157, 80 P. 365 (1905) the general rule in Arizona dealing with vacation of execution sales because of inadequate bids is that mere inadequacy of price, where the parties stand on an equal footing and there are no confidential relations between them, is not, in and of itself, sufficient to authorize vacation of the sale unless the inadequacy is so gross as to be proof of fraud or shocks the conscience of the court.

*Wiesel v. Ashcraft*, 26 Ariz.App. 490, 494, 549 P.2d 585, 589 (1976) (citations omitted). The general rule is simply that judicial foreclosure sales are set aside when "the inadequacy [of price is] so great as to shock the conscience . . . ." *Graffam v. Burgess*, 117 U.S. 180, 192, 6 S.Ct. 686, 692 (1886). While the rationale of setting aside judicial foreclosure sales for gross inadequacy is well understood, it is not the only basis for upsetting such sales. Judicial foreclosure sales have been set aside even in the absence of gross inadequacy when there has been some irregularity. "[W]here there is an inadequacy of price which in itself might not be grounds for setting aside the sale, slight additional circumstances or matters of equity may so justify." *Mason v. Wilson*, 116 Ariz. 255, 257, 568 P.2d 1153, 1155 (App. 1977) (citing *Johnson v. Jefferson Standard Life Ins.*, 5 Ariz.App. 587, 429 P.2d 474 (1967)). Thus, even in a judicial sale inadequate price cannot, alone, guarantee vacation of the sale. A sale may be set aside, however, for inadequate price combined with other irregularity or for grossly inadequate price. The question is whether the same rules are applicable to trustee's sales.

## B.     Deed of trust and borrower's protection from inequity

**¶8**     Unlike their judicial foreclosure cousins that involve the court, deed of trust sales are conducted on a contract theory under the power of sale authority of the trustee. They are therefore

4

held without the prior judicial authorization ordered in a mortgage foreclosure. "[A] power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold . . . after a breach or default in performance of the contract or contracts, for which the trust property is conveyed as security . . . ." A.R.S. § 33-807(A).

¶9 The deed of trust scheme is a creature of statutes[1] that do not contain explicit provisions for courts to set aside non-judicial sales based on the price realized at the sale, and no policy for such action has yet evolved with these sales as there has in judicial foreclosure sales.

¶10 The deed of trust provisions were added to Arizona law in 1971 following complaints by representatives of the mortgage industry that the "mortgage and foreclosure process in Arizona [was] unnecessarily time-consuming and expensive."[2] It was said at the time that an uncontested $25,000 mortgage foreclosure could take eight months and a contested foreclosure twelve to fourteen months.[3] The deed of trust alternative permitted lenders to bypass this time-consuming and expensive judicial foreclosure by simply using their new power of sale authority to sell the property securing a delinquent loan after complying with statutory procedural requirements. There is even a statutory presumption of procedural fairness and accuracy by the mere completion of a sale. "The trustee's deed shall raise the presumption of compliance with the requirements of . . . this chapter . . . ." A.R.S. § 33-811(B). Commenting on the two foreclosure methods, this court has said:

> A mortgage generally may be foreclosed only by filing a civil action while, under a Deed of Trust, the trustee holds a power of sale permitting him to sell the property out of court with no necessity of judicial action. *The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage.* Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower.

---

[1] A.R.S. § 33-801 *et seq.*

[2] Gary E. Lawyer, Note, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage*, 15 ARIZ. L. REV. 194, 194 (1973) (citing Legislative Council Comm. on Deeds of Trust, 29th Ariz. Leg. (minutes of meeting, May 16, 1969)).

[3] *Id.* (citing Comm. on Mortgage Law & Practice, ABA; comments of State Superintendent of Banks Franklin J. Stowell).

*Patton v. First Federal Sav. & Loan Ass'n*, 118 Ariz. 473, 477, 578 P.2d 152, 156 (1978) (emphasis added).

**¶11**        Aside from the issue in this case, the primary loss in protection for deed of trust borrowers lies in the absence of redemptive right because purchasers at a deed of trust sale no longer take title subject to a mortgagor's six-month right of redemption.[4]  Most observers could regard that loss of right as quite disadvantageous to the mortgagor.  However, an offsetting theory holds that because there is less uncertainty as a consequence of the elimination of redemptive rights and because there is no judicial oversight, bidders can afford to offer higher prices at a deed of trust sale.  Model deed of trust procedures include notice requirements and bidder qualification intended to "encourage more vigorous bidding in order to produce a price closer to the property's fair market value than would otherwise be possible . . . ."  4 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 37.42[5] (Michael Allan Wolf ed., 2000) (citing Uniform Land Security Interest Act § 509(b) (1985)).  The Powell treatise, however, does not take the position that judicial consideration of gross inadequacy as a ground for upsetting a sale is forbidden.

> Like a Judicial sale arising out of foreclosure by auction, a sale under a power may not be attacked on the ground of mere inadequacy of price *unless the bid was so low as to shock the conscience of the court* or elements of unconscionable action or chilling of the bidding are present.

*Id*. at § 37.42[6] (emphasis added).

**¶12**        Our court of appeals has held that "the setting aside of a trustee sale for *inadequacy of price*" was not part of Arizona law.  *Security Sav. & Loan Ass'n v. Fenton*, 167 Ariz. 268, 270, 806 P.2d 362, 364 (App. 1990) (emphasis added).  The policy articulated in *Fenton* is correct as to inadequacy of price and, as noted, applies also to judicial sales.  *See ante* ¶ 7.  But *Fenton* did not involve a price

---

[4]*Cf*. A.R.S. § 12-1283, which provides for a six-month period following a judicial sale during which a debtor may redeem his interest.  By contrast, reinstatement under a deed of trust by payment of the delinquency is possible only to the afternoon *preceding* the sale.  A.R.S. § 33-813.

found to be grossly inadequate, one that shocked the conscience of the court.[5] Thus, the *Fenton* court did not consider the question before us now. The RESTATEMENT OF PROPERTY takes a view that encompasses both judicial and non-judicial sales:

> Adequacy of Foreclosure Sale Price:
>
> (a) A foreclosure sale price obtained pursuant to a foreclosure proceeding that is otherwise regularly conducted in compliance with applicable law does not render the foreclosure defective unless the price is grossly inadequate.
>
> (b) Subsection (a) applies to both power of sale and judicial foreclosure proceedings.

RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.3 (hereinafter RESTATEMENT).

¶13 The present case is one of first impression as neither we nor our court of appeals has ever considered the particular issue of setting aside a deed of trust sale for *gross* inadequacy of price. We also note that the statutes dealing with deeds of trust are silent on that question. Moreover, as we have already discussed, we have always followed the rule that courts of equity have the power to vacate a judicial sale for gross inadequacy of price compared to fair market value even though there is no express statutory authorization to do so.

## C. Issues and positions

¶14 Krohn urges the courts to set aside the sale of her house on the grounds that the winning bid was grossly inadequate, and she urges adoption of RESTATEMENT § 8.3. Sweetheart urges approval of the sale, arguing its position as a bona fide purchaser and asserting there is no express statutory provision for overturning a trustee's sale based on price.

¶15 An amicus brief filed in support of Sweetheart urges us to take a comprehensive view. Emphasizing that its member trustees are from Arizona, California, Texas, and Washington, the Arizona

---

[5]We purposefully conflate the two phrases because we see no meaningful distinction between them. Some cases, however, have attempted to draw a distinction. *See* RESTATEMENT OF PROPERTY § 8.3, Reporter's Notes, cmt. b.

Trustee Association (ATA) informs us that the proper resolution of this issue is crucial to the continued viability of the foreclosure industry in Arizona.

¶16         ATA describes its active members as "individuals and entities engaged in all aspects of non-judicial foreclosures, including the preparation of title reports, the posting and publishing of notices, the legal analyses, the appraisals and valuation, and the conduct of trustee's sales at public auctions." It defines its twin purposes as educating its members and ensuring fairness and consistency in the trustee's sale process. Their interest therefore derives from reliance on the statutory scheme and security in the knowledge that if the statutory scheme is followed and strictly enforced, the sale will be valid. This appreciation for the orderliness of the process is to be commended and preserved, but there must also be recognition that those interests are not co-extensive with the interests of the other parties.

¶17         The mortgage banking and lending industry is of great importance to our economy, but lenders are primarily and vitally concerned with getting their money back with the agreed upon interest payments. The health of their industry depends on repayment, not on foreclosure. Borrowers are justifiably concerned with legitimate protection against inequitable loss of their property if there is a foreclosure. To the extent that judicial oversight to prevent gross inadequacy of bidding at trustee's sales may actually increase prices realized, both lenders and borrowers would benefit. We doubt ATA's thoughtful brief meant to suggest there is such a thing as a foreclosure industry that opposes either the interests of lenders or borrowers. There are, of course, those waiting for opportunities based on individual misfortune, and we believe this makes it even more important that courts of equity are open to assure debtors receive not only procedural but fundamental fairness. Windfall profits, like those reaped by bidders paying grossly inadequate prices at foreclosure sales, do not serve the public interest and do no more than legally enrich speculators. We doubt this serves the legitimate interests of trustees any more than it serves the legitimate interests of lenders or borrowers.

8

**D. Resolution**

¶18       We have long followed the "rule that where not bound by [our] previous decisions or by legislative enactment, [we] would follow the Restatement of the Law." *Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 302-03, 162 P.2d 133, 137 (1945). Because the deed of trust statutes contain neither permission for nor prohibition against limited equitable oversight of deed of trust sales, and as noted earlier, no appellate court in this state has considered deed of trust sales that are grossly inadequate, we must now ask whether RESTATEMENT § 8.3 is good legal policy. If it is not, then we should reject it.

¶19       Thus we turn to the reasons ATA and Sweetheart advanced against even the limited judicial oversight over deed of trust sales provided in Section 8.3. Specifically, these are that judicial oversight will chill the market and discourage bidders, that the status of bona fide purchasers will be undermined, and that it will be difficult to determine the appropriate fair market value against which evaluations of gross inadequacy will be made. We will discuss those in turn.

     **1.       Chilled market**

¶20       We are presented with no evidence or data indicating that prices paid at sales made under a power of sale bring an appreciably higher percentage of fair market value than prices bid at judicial foreclosure sales.[6] To be sure, neither Sweetheart nor ATA made this argument, but it is perhaps the only compelling policy reason to support the loss of all judicial oversight. *See Bauman v. Day*, 892 P.2d 817, 824 n.8 (Alaska 1995). Moreover, we have been presented with no data indicating that the traditional judicial foreclosure market has been disrupted by existing judicial oversight to prevent grossly inadequate prices, and such a result is not self-evident. In fact, without apparent adverse effect

---

[6]The several reasons for this are described in RESTATEMENT § 8.3 cmt. a. The real possibility that foreclosure by sale is no more that a charade resulting in windfall profits to the high bidder who later resells the property is tellingly described by one investigator. *See* Steven Wechsler, *Through the Looking Glass: Foreclosure by Sale as De Facto Strict Foreclosure —An Empirical Study of Mortgage Foreclosure and Subsequent Resale*, 70 CORNELL L. REV. 850, 896 (1985).

on the market, even sales under deeds of trust have been set aside when prices have been grossly inadequate *and* there was also absence of strict statutory compliance.

¶21        For example, the Washington Supreme Court voided a trustee's sale when it found the trustee had breached fiduciary duties by ignoring a suit by the grantor and had sold, for less than $12,000, a home in which the grantor had equity of at least $100,000. *Cox v. Helenius*, 693 P.2d 683 (Wash. 1985). A federal court voided the sale of property appraised at $240,000 after it had been incorrectly described in the notice and was purchased at the foreclosure sale for less than $15,000, only to be sold seventeen days later for $130,000. *In re Worcester*, 811 F.2d 1224 (9th Cir. 1987). There is no reason to expect a rule that also permits courts of equity to overturn *grossly* inadequate deed of trust sales would disrupt that market, and so far as we know, the cases just cited have not destroyed or impaired the foreclosure industry on the west coast.

¶22        Indeed, purchasers continue to come forward, making deed of trust purchases without certain knowledge that the trustee has fully complied with the statutory procedural obligations and thus take a risk that the sale may be set aside for that reason. For example, there was no apparent flight from deed of trust sales after we vacated such a sale when we found a ninety-day statutory notice of sale did not negate the additional thirty-day notice required in the deed of trust itself. *Schaeffer v. Chapman*, 176 Ariz. 326, 861 P.2d 611 (1993).

¶23        Perhaps this is because most purchasers believe, as we do, that only the smallest minority of deed of trust sales are conducted without statutory compliance, just as we also believe that most purchasers will assume only the smallest number of deed of trust sales are concluded at a price that could shock the conscience of the court because of gross inadequacy. That said, we think it just as likely that the possibility of judicial oversight on the ground of gross inadequacy will result in higher prices. If so, we think this will serve rather than impair the public interest.

### 2.    **Bone fide purchaser**

¶24        The bankruptcy judge found that Sweetheart was a bona fide purchaser. Absent special

circumstances, sales to bona fide purchasers are not upset by the courts. But the status of bona fide purchaser by itself cannot insulate even a well meaning purchaser innocent of wrongdoing when other circumstances are present. "Also to be noted is that the rule of 'caveat emptor' applies to purchasers at execution sales." *Nussbaumer*, 107 Ariz. at 508, 489 P.2d at 847 (citing *Lebrecht v. Beckett*, 96 Ariz. 389, 396 P.2d 13 (1964)). We see no reason why the same rule should not apply in non-judicial sales.

¶25        Judge Baum found that Sweetheart had no knowledge of the dealings between Krohn and her lender. One easily imagines, however, that although any potential purchaser at a trustee's sale or a judicial foreclosure may be unaware of the details of the relationship between a particular lender and debtor, every potential purchaser is certainly aware that there *were* dealings between *a* lender and *a* debtor, for how else would the property be set for execution sale? Purchasers at such sales already take the risk of unknown procedural errors. *Schaeffer*, 176 Ariz. at 328, 861 P.2d at 613. Such bidders can reasonably expect to get bargains because of the nature of foreclosure sales, but public policy and the courts should not endorse extraordinary bargains at the expense of already troubled debtors.

¶26        Finally, while bona fide purchasers have not been deterred by the possibility of a vacated sale caused by circumstances out of their knowledge and control before the sale, the price paid is completely within the purchaser's control. Knowledgeable purchasers can reasonably evaluate the fair market value of a property to make an appropriate bid that is not grossly inadequate. Thus, while Sweetheart was a bona fide purchaser with respect to the dealings between Krohn and her lender, it is chargeable with knowledge as to the sale price.

### 3.    Fair market value

¶27        The United States Supreme Court has stated that fair market value cannot be expected in foreclosure sales. "In short, 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 538, 114 S.Ct. 1757, 1761 (1994). We agree and do not expect that prices in forced sales would reflect the same

market value "as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular . . . piece of property." *Id.* (quoting BLACK'S LAW DICTIONARY 971 (6th ed. 1990)). It is to be expected, therefore, that courts will occasionally experience difficulty when attempting to determine fair market value in the context of a forced sale. But again, we must note that the debtor will have the burden of showing gross inadequacy as compared to fair market value, and the need to make these judgments has not disrupted the system of judicial foreclosure.

¶28        Simply because a determination of fair market value is or may be difficult does not mean the courts should or could avoid the problem. For example, there is statutory protection in Arizona when a deficiency judgment is sought following a deed of trust sale and the debt owed is more than the amount bid at sale. In such cases, the debt(s) owed will be credited with "the *fair market value* of the trust property on the date of the sale *as determined by the court* or the sale price at the trustee's sale, whichever is higher." A.R.S. § 33-814(A) (emphasis added).[7] It is clear, therefore, that our legislature contemplated that courts might have to consider the fair market value of property sold through a deed of trust. By adopting the statutory procedure described above, it is also clear that the legislature determined the risk of a below-market sale price belonged with the mortgagee and not the mortgagor.

### 4.        Determining gross inadequacy

¶29        There is an additional problem, of course, in determining just when a price is grossly inadequate. However, guidance can be found in the comment to Section 8.3:

> "Gross inadequacy" cannot be precisely defined in terms of a specific percentage of fair market value. *Generally*, however, a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value and, absent other foreclosure defects, is usually not warranted in invalidating a sale that yields in excess of that amount.

[7]This is consistent with the approach promulgated by RESTATEMENT § 8.4(d): "If it is determined that the fair market value is greater than the foreclosure sale price [the debtor is] entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price."

RESTATEMENT § 8.3 cmt. b (emphasis added). In *Fenton*, our court of appeals noted, "even assuming that the price was inadequate, that fact standing alone would not justify setting aside the trustee's sale . . . 'there must be *in addition proof of some element of fraud, unfairness, or oppression* as accounts for and brings about the inadequacy of price.'" 167 Ariz at 270, 806 P.2d at 364 (quoting *C.R. Oller v. Sonoma County Land Title Co.*, 290 P.2d 880, 882 (Cal.App. 1955) (emphasis added)). We believe *gross* inadequacy *is* proof of unfairness, and as we have seen, gross inadequacy, as defined in comment b to RESTATEMENT § 8.3, is more than inadequacy. Thus, a rule allowing limited judicial oversight does not conflict with *Fenton* — it is still the law in Arizona that trustee's sales will not be set aside for inadequacy of price without more. Further, the statutory presumption of compliance in A.R.S. § 33-811(A) need not be weakened today; issuance of a trustee's deed carries with it the presumption of compliance with all requirements.

## D.    The dissent

¶30        The dissent is concerned that no statute permits a court to use its equity powers to intervene in a trustee's sale. That is true, but as we have noted, it is also quite true that there is no statute prohibiting it. There is also no statute permitting or prohibiting intervention in a trustee's sale in which there has been some procedural irregularity. But as the dissent acknowledges, case law establishes that courts may do so. Dissent at ¶¶ 48-49. Moreover, though there is no Arizona statute permitting a court of equity to intervene in a judicial sale because of gross inadequacy of the bid price, this court did not hesitate to hold that it had equitable power to do so. *Nussbaumer*, 107 Ariz. at 507, 489 P.2d at 846.

¶31        Why should the equitable rule regarding gross inadequacy be different with respect to trustee's sales? The dissent says that in overseeing judicial sales, the court is simply supervising its own process — the writ of execution. Dissent at ¶ 40. But equitable powers are not limited to supervision of the court's process. *See* 1 DAN B. DOBBS, LAW OF REMEDIES § 2.1(3) (2d ed. 1993). Our court long ago faced the issue presented by the present case: In the absence of statutory authority, can a court use its equitable powers to intervene and set aside a foreclosure sale made for a grossly

inadequate price?  The argument against doing so was the argument recognized in the cases, that the sale can be set aside only if the inadequate price was accompanied by some other irregularity.  We rejected that argument for judicial sales in 1905 and do so today with regard to non-judicial sales for the same reasons:

> An examination of the authorities will show that the courts hesitate to declare inadequacy of the selling price a sufficient ground in itself for vacating an execution or judicial sale. . . .  "So far as any general rule has been formulated upon the subject, it seems to be this:  'That mere inadequacy of price, where parties stand on an equal footing, and there are no confidential relations between them, is not, of itself, sufficient to set aside a sale unless the inadequacy is so gross as to be proof of fraud, or to shock the judgment and the conscience.'"  Freeman on Executions, 3d ed. sec. 3041.  If the inadequacy can be connected with or shown to result from any mistake, accident, surprise, misconduct, fraud, or irregularity, the sale will generally be vacated.  Id. sec. 309.  And in the same section the learned author observes:  "We think the better rule is that inadequacy of price may be so gross as to create the presumption of fraud or misconduct on the part of the officer or the purchaser."  It was said by the supreme court of Alabama, in the case of *Henderson v. Sublett*, 21 Ala. 630:  "When the inadequacy is so glaring and gross as at once to shock the understanding and conscience of an honest and just man, it will, of itself, authorize the court to set aside the sale. . . ."

*McCoy v. Brooks*, 9 Ariz. 157, 159-60, 80 P. 365, 366 (1905).

¶32    Nor do the cases that recite that the court may use its equitable power to intervene if the inadequacy of price is combined with some procedural irregularity explain why the combination is required and why, to borrow a phrase, we cannot have one without the other.  *See, e.g.*, *Moeller v. Lien*, 30 Cal.Rptr.2d 777, 784 (Cal.App. 1994).  But tracing *Moeller*'s antecedents, we come eventually to a 1924 case, the first or one of the first that lays down the rule, ending with the comment that "where the price thus bid . . . is greatly disproportionate to its actual value, *very slight* evidence of unfairness or irregularity will suffice to authorize the relief sought."  *Baldwin v. Brown*, 224 P. 462, 465 (Cal. 1924) (emphasis added).  We are not told the importance of "very slight" unfairness or irregularity.  Why the need for such a makeweight?

¶33    We could no doubt find very slight irregularity in the present case, given the error regarding the timing indicated in the notice of sale.  *See ante* ¶ 4.  But that error is not the core of the case; nor

14

does it justify relief. At its core, this is a case about inequity on the one hand and unjust enrichment on the other. When these factors are present, our court has been available to give relief so long as there is no statutory prohibition. *Sparks v. Douglas & Sparks Realty Co.*, 19 Ariz. 123, 129, 166 P. 285, 288 (1917). In any event, deeds of trust are creatures of statute, and if the legislature believes that the doors of the courthouse should be closed and the courts forbidden to grant relief to those who are unjustly and inequitably deprived of their homes by speculators or others seeking windfall profits, it may say so.

¶34        The dissent is also concerned for boundaries for today's holding. Dissent at ¶41. There is, of course, no statute of limitations as to when the question of gross inadequacy must be raised, though the legislature could certainly enact such a statute. Of course, the doctrine of laches applies, and we seem to have survived despite there being no statute limiting the time when gross inadequacy may be raised as a ground for setting aside a judicial sale. Moreover, the balance of equities would be considerably different if the person who acquired the property for a grossly inadequate price sold it to a bona fide purchaser. As to the guidance provided by this opinion in defining grossly inadequate price, we can only point out that the RESTATEMENT indicates that twenty percent of market value is generally considered a grossly inadequate price. The parties, of course, are free to argue under the facts of a particular sale that a different percentage is or is not grossly inadequate. *See* RESTATEMENT § 8.3 cmt. b and illus. 6.

¶35        Finally, the dissent asserts that there is no question of unjust enrichment in the present case because the purchaser at the trustee's sale "was not the lender, but a third party." Dissent at ¶50. We are unable to understand the distinction. It makes little difference whether a lender or a speculator was unjustly enriched. The important considerations are the questions of inequity on the one hand and unjust enrichment on the other. When these are present, the court may use its equitable powers.

**CONCLUSION**

¶36        As we said earlier, if one result of our adoption of RESTATEMENT § 8.3 is that slightly

15

higher prices prevail for sales conducted at the margin of the twenty percent yardstick, then we believe public policy is served. Accepting Sweetheart's argument and approving the sale in question would yield an inequitable and illogical result. It would protect the financial interests of defaulting mortgagors with high debt who receive credit for fair market value when creditors pursue a deficiency judgment and would neglect the financial interests of defaulting mortgagors with low debt, like Krohn, who lose all or nearly all their equity to a grossly inadequate bid price.

¶37 The rule we adopt today is consistent with our legislature's concern for debtors and its desire to respond to needs of the mortgage and home lending industry. The interests of debtors in need are protected without changing the obligations of debtors or the rights of lenders or trustees conducting valid sales, without throwing into disorder the well-established procedures for making purchases at those sales, and without creating risk for purchasers seeking bargains, albeit fair ones.

¶38 For the foregoing reasons we answer the question in the affirmative. We adopt RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.3: a sale of real property under power of sale in a deed of trust may be set aside solely on the basis that the bid price was *grossly* inadequate.

_____

STANLEY G. FELDMAN, Justice

CONCURRING:

_____

CHARLES E. JONES, Chief Justice

_____

THOMAS A. ZLAKET, Justice (retired)

16

M c G R E G O R, Vice Chief Justice

¶39      I respectfully dissent.   I am not certain whether the procedure the majority approves today represents wise public policy; it may well.   I am certain that today's opinion places this court in the position of adding to, not interpreting, a statutory procedure. That process should be left to the legislature.

¶40      The defects in the majority's approach stem from its insistence upon treating the court's authority over trustee's sales, which are non-judicial foreclosures, in the same manner as we treat our authority over judicial foreclosures.   Our authority to set aside a judicial sale arises from the court's "inherent power to control [our] own process[es]." *Nussbaumer v. Superior Court*, 107 Ariz. 504, 506, 489 P.2d 843, 845 (1971); *Wiesel v. Ashcraft*, 26 Ariz. App. 490, 493, 549 P.2d 585, 588 (1976).   That authority, however, does not extend to sales pursuant to deeds of trust, which, as the opinion recognizes, are entirely creatures of statute. Op. ¶ 9. By extending our authority to this statutory creation, we commit error.

### A.

¶41      I disagree with the majority's conclusion for several reasons.  The first involves the difficulty in understanding just what cause of action today's opinion creates.  The action approved today is a legal action without parameters, for it has no common law antecedent and finds no authority in statute.   We now know that a trustor can move to set aside a trustee's sale of property under a deed of trust solely on the basis that the bid price was grossly inadequate, even if the successful bidder is a bona fide purchaser for value. But when must the action be brought? Certainly not within a redemption period, for no redemption period exists under the statutes governing

17

deeds of trust. If the limitations period for this action falls within Arizona's general limitations period, a purchaser at a trustee's sale must wait four years to know whether the sale will be challenged. *See* Ariz. Rev. Stat. (A.R.S.) § 12-550 (Supp. 2001). If this action is in the nature of an equitable action, as the majority suggests, does the right to trial by jury attach? And what of the majority's statement that the comment to Restatement (Third) of Property: Mortgages section 8.3 (1997) provides "guidance" as to what constitutes a grossly inadequate price? Op. ¶ 29. Should litigants and trial courts now understand that a comment to the Restatement has established a presumptive level of gross inadequacy? Are the parties free to argue that, under the facts of a particular sale, a sale price of less than twenty percent of fair market value is not grossly inadequate?

¶42 I will not further belabor the point. When the court creates a new cause of action out of whole cloth, litigants may justly question how to establish or defend against the vaguely-described claim created.

**B.**

¶43 As the majority notes, we tend to follow the Restatement unless its views do not represent good legal policy or conflict with legislative enactments or our prior decisions. In my view, adopting the view expressed in Restatement section 8.3 falls within both the exceptions.

¶44 Arizona's Deed of Trust Act (the Act), A.R.S. §§ 33-801 to 33-821, first authorizes deeds of trust and then provides a detailed and comprehensive framework for carrying out non-judicial foreclosures. Essential to this action, the Act omits any requirement that the bidder at a trustee's sale make a minimum bid. Instead, the Act requires

18

that the trustee "determine which conditional sale or sales result in the highest total price bid for all of the trust property." A.R.S. § 33-810.A (Supp. 2001). The sale "shall be completed" when the purchaser makes payment in a form satisfactory to the trustee. *Id*. The trustee's deed, once issued, "shall raise the presumption of compliance with the requirements" of the Act. A.R.S. § 33-811.B (Supp. 2001). The Act also makes provision, in some instances, for obtaining a deficiency judgment. If a deficiency action is not timely filed, however, the proceeds of the sale are deemed to be in full satisfaction of the obligation, "regardless of the amount." A.R.S. § 33-814.D (2000). Although the Act refers to fair market value with respect to determining the amount of a deficiency judgment, A.R.S § 33-814.A, it pointedly does not refer to fair market value as a measuring point for the amount of a purchaser's bid, which the Act does not limit in any manner.

¶45    If the legislature had intended to require a minimum bid, whether related to fair market value or some other measure, it surely would have done so. *See, e.g.,* Ark. Code. Ann. § 18-50-107(b) (Michie Supp. 2001) (requiring bids of at least two-thirds the amount of the indebtedness due). I see no basis for regarding the absence of a minimum bid requirement as an oversight. Instead, the legislature quite clearly intended that the trustee determine the highest bid made and issue a trustee's deed on that basis. The view of the Restatement thus conflicts with Arizona's statutory law, and we should not adopt that approach.

¶46    Today's opinion does not simply permit "a court to use its equity powers to intervene in a trustee's sale." Op. ¶ 30. Rather, the opinion writes a new statutory section that defines and requires

19

a minimum bid, if the bidder wishes to avoid a challenge to the trustee's sale at some undefined future time. It may well be wise policy for the legislature to add a minimum bid requirement to the Act, but the legislature, not this court, should make that decision. The answer to the question why the rule for a trustee's sale should be different than that for judicial foreclosures, Op. ¶ 31, thus is simply that the trustee's sale proceeds under statutory authority, which we lack authority to amend.

## C.

¶47    We also do not adopt the Restatement view if it does not reflect good legal policy. So far as I can determine, only one other state has adopted the Restatement position that we accept today. *See Rife v. Woolfolk*, 289 S.E.2d 220, 223 (W. Va. 1982). Although we are not bound by the decisions of other courts, the fact that other jurisdictions do not permit setting aside a trustee's sale solely on the basis of grossly inadequate price reveals much about the validity of the Restatement view.

¶48    The majority cites little authority to support its decision to adopt the Restatement view. The reason may be that authority supporting today's decision is lacking. Although Restatement section 8.3 applies to both judicial and non-judicial foreclosures, the numerous cases the Restatement cites in support of the position taken in fact apply, with one exception, to *judicial* foreclosures. Certainly considerable authority exists for the proposition that courts may set aside *judicial* sales that, although lacking other defects, involve a grossly inadequate sales price. *E.g., Moody v. Glendale Fed. Bank*, 643 So. 2d 1149, 1149 (Fla. Dist. Ct. App. 1994); *Union Nat'l Bank v. Johnson*, 617 N.Y.S.2d 993, 995 (App. Div. 1994); *United Okla. Bank*

20

*v. Moss*, 793 P.2d 1359, 1364 (Okla. 1990); *Vend-A-Matic, Inc. v. Frankford Trust Co.*, 442 A.2d 1158, 1162 (Pa. Super. Ct. 1982). Still other *judicial* sale cases support setting aside a sale if the price is so low "as to shock the conscience of the Court or to amount to fraud." *Allied Steel Corp. v. Cooper*, 607 So. 2d 113, 118 (Miss. 1992) (quoting *Wansley v. First Nat'l Bank of Vicksburg*, 566 So. 2d 1218, 1224 (Miss. 1990)) (quotation marks omitted); *see also Burge v. Fidelity Bond & Mortgage Co.*, 648 A.2d 414, 419 (Del. 1994); *Bascom Constr., Inc. v. City Bank & Trust*, 629 A.2d 797, 800 (N.H. 1993); *Armstrong v. Csurilla*, 817 P.2d 1221, 1233 (N.M. 1991); *Crown Life Ins. Co. v. Candlewood, Ltd.*, 818 P.2d 411, 414 (N.M. 1991); *Trustco Bank New York v. Collins*, 623 N.Y.S.2d 642, 642 (App. Div. 1995); *Crossland Mortgage Corp. v. Frankel*, 596 N.Y.S.2d 130, 131 (App. Div. 1993); *Verex Assurance, Inc. v. AABREC, Inc.*, 436 N.W.2d 876, 879 (Wis. Ct. App. 1989). I agree with the holdings of those decisions, which are consistent with Arizona law, but they shed no light on the issue considered here.

¶49 Those states that permit setting aside a trustee's sale almost uniformly require something more than a grossly inadequate price to invalidate a sale. *E.g., Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1503 (5th Cir. 1989) (concluding that under Texas law, in order for inadequacy of price to invalidate a trustee's sale, "there must also be some irregularity in the foreclosure" leading to the inadequate price); *Moeller v. Lien*, 30 Cal. Rptr. 2d 777, 784 (Ct. App. 1994) ("Where there is no irregularity in a nonjudicial foreclosure sale and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and the value of the property is not a sufficient ground for setting aside the sale."); *Aikens v.*

*Wagner*, 498 S.E.2d 766, 768 (Ga. Ct. App. 1998) (requiring a grossly inadequate price and additional circumstances that bring about the inadequate price); *Brunzell v. Woodbury*, 449 P.2d 158, 159 (Nev. 1969) (same).

¶50        In addition to the dearth of legal authority supporting the Restatement rule for non-judicial sales, the policies underlying Restatement section 8.3 do not apply in this case. The comments to section 8.3 describe two intertwined policy considerations that support the rule:  protecting debtors from large deficiency judgments and preventing lenders from being unjustly enriched. Restatement § 8.3 cmt. a.  We further neither of these considerations by applying the Restatement rule here.  Our deficiency statute addresses the first concern, by limiting deficiencies to the difference between the amount owed and the fair market value of the property.  A.R.S. § 33-814.A. While the second consideration may apply generally, it does not apply to this case because the purchaser was not the lender, but a third party.

¶51        Only one and, as of today, two jurisdictions have adopted the Restatement view for non-judicial sales.  The reason, I think, is clear:  courts have no inherent power to control the processes selected by the legislature to govern non-judicial foreclosures.

**D.**

¶52        The public policy considerations raised by the situation presented deserve careful consideration.  The majority may be right in stating that its decision will benefit both lenders and borrowers, Op. ¶ 17, and may be right in stating that setting aside deeds of trust will cause no adverse effect on the market.  Op. ¶ 20.  The majority may also be correct in concluding that judicial oversight

22

on the ground of gross inadequacy will result in higher prices being paid at non-judicial foreclosures.  Op. ¶ 23.  It may be accurate to conclude that today's decision will protect debtors without affecting the rights of lenders and trustees or "throwing into disorder the well-established procedures" of trustee's sales.  Op. ¶ 37.

¶53     On the other hand, amicus Arizona Trustee Association, Inc. (the Association), may be correct in asserting that imposing a burden on trustees to determine fairness of bids will have far-reaching economic consequences, will have a chilling effect at sales, and will make third party bidders reluctant to participate, knowing a sale can be set aside at some later date.  The Association also may be correct in arguing that the absence of competitive bidding will reduce sales prices and result in more deficiency judgments, which will in turn harm debtors.  It may be true that today's holding will make property purchased at trustee's sales much less marketable.

¶54     I do not pretend to know which of these arguments should carry the day.  Presumably, these are the types of concerns that the legislature took into consideration and balanced before adopting the Act.  Any further balancing of these competing interests should be undertaken by the legislature.

**E.**

¶55     For the foregoing reasons, I respectfully dissent.

_____

Ruth V. McGregor, Vice Chief Justice