NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

NATHAN SCHUMACHER, *Plaintiff/Appellee,*

*v.*

LINDA HARGRAVE, *Defendant/Appellant.*

No. 1 CA-CV 22-0342
FILED 2-23-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2021-095508
The Honorable Brian Kaiser, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

---

COUNSEL

Greenbriar Law, PLC, Phoenix
By Walid A. Zarifi
*Counsel for Defendant/Appellant*

Giles & Dickson, P.C., Mesa
By Spencer Dickson
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge David D. Weinzweig joined.

---

**C A M P B E L L**, Judge:

**¶1**        In this forcible detainer action brought by Nathan Schumacher, Linda Hargrave appeals from the superior court's monetary award. We affirm the award but modify the amount based on the parties' agreement that an arithmetic error led to an overassessment of damages.

## BACKGROUND

**¶2**        Schumacher bought Hargrave's 10,000-plus square-foot home in Paradise Valley (the Property) at a trustee's sale in November 2021. Later that month, Schumacher gave Hargrave a written demand for possession of the Property. When Hargrave did not vacate, Schumacher filed a forcible detainer action.

**¶3**        Before trial, the parties agreed that Schumacher was entitled to possession and Hargrave would vacate the Property. The parties disputed the amount of fair market rent owed to Schumacher but agreed to forgo trial and each submit to the court their evidence and written argument. Based on the parties' agreement,[1] the court granted judgment against Hargrave, finding her guilty of forcible detainer, and ordered the parties "to submit [their] documentation for fair market value."

**¶4**        Schumacher, who "is in the business of purchasing, selling, and renting real estate," argued that the fair market rental value was "$30,000 per month." He cited a "common rule of thumb . . . that monthly fair market rent is 1% of the value of the property," and he purchased the Property for $3.09 million. Schumacher also provided five Zillow listings that he considered "the most relevant comps for rentals." Because "[t]here [we]re no 10,000+ sq[uare foot] homes for rent in the area," he relied on

---

[1]        The parties' agreement is not in the appellate record, and Hargrave did not provide the hearing transcript. We therefore assume the transcript "would support the court's findings and conclusions." *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995).

homes with smaller square footage. The monthly rent varied from $17,000 to $50,000, leading to an average price of $4.56 per square foot. Although that rate would place the Property's rental value at roughly $53,188 monthly, Schumacher maintained that "$30,000 per month" was "a fair number," "[c]onsidering that [the Property] may have some defects in need of repair."

¶5 Hargrave, on the other hand, asked the court to either ascribe a zero-dollar rental value or consider evidence of the Property's poor condition when determining the fair market rental value. She emphasized the Property's issues went "*well beyond* normal wear and tear" and included "numerous hazardous conditions . . . that simply preclude any type of residential lease as improper or illegal." In support of her contention that the Property had no rental value, she provided a half-page list and 12 photos of "hazardous conditions/items of repair," noting water, structural, and electrical damage in parts of the Property. Hargrave also emphasized that prior to his purchase, Schumacher knew of the Property's dilapidated condition.

¶6 In January 2022, the superior court issued its judgment (1) awarding Schumacher possession of the Property and (2) granting him a money judgment consisting of "[f]air market rent in the amount of $62,000 (93 days rent[2] at $20,000 per month)," plus costs and attorney's fees. Hargrave later moved for a new trial. Noting that the motion lacked "any affidavit[s] and contain[ed] no citations to case law, statute, or the record," the court denied it as "[l]acking any specific assertion of error or basis for a new trial." Hargrave timely appealed.[3]

---

[2] Although disputed below, the applicable rental period is not before us. Hargrave did not raise the issue here, thereby waiving it on appeal. *See Belen Loan Invs., LLC v. Bradley*, 231 Ariz. 448, 457, ¶ 22 (App. 2012) ("[I]ssues not clearly raised and argued in a party's appellate brief are waived.").

[3] Hargrave cites as error the lack of "any requisite Rule 54(b) or (c) language." But appeals from forcible detainer actions are governed by Rule 17 of the Rules of Procedure for Eviction Actions (RPEA), which does not incorporate the Rules of Civil Procedure by reference. *AU Enters. Inc. v. Edwards*, 248 Ariz. 109, 111, ¶ 6 (App. 2020); *see also* Ariz. R. P. Eviction Act. 17. "Therefore, the determination of finality as contemplated by Rule 54, Ariz. R. Civ. P., does not apply here." *AU Enters. Inc.*, 248 Ariz. at 111, ¶ 6. Instead, Rules 13 and 17 of RPEA govern, along with Rule 9 of ARCAP. *Id.* (requiring resolution of possession, damages, costs, and attorney's fees).

**DISCUSSION**

¶7        On appeal, Hargrave challenges only the court's valuation of the fair market rental rate. She argues the court erred by "neglecting to take account of the *specific* deficiencies/issues that existed at the property *at the time of sale*, which essentially rendered the premises unmarketable in a true market scenario." Finding reasonable evidence to support the court's valuation, we disagree.

¶8        In a forcible detainer action brought under A.R.S. § 12-1173.01, fair market rent is an appropriate measure of damages when a tenant refuses to vacate a rental property because the owner is denied use of his property. *See Montano v. Luff*, 250 Ariz. 401, 404–05, ¶ 9 (App. 2020); *see also* A.R.S. § 12-1173.01 (permitting forcible detainer action by purchaser of property at trustee's sale). Fair market valuation is "a factual determination that must be based on the facts and circumstances of each case." *BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 592, ¶ 18 (App. 2021). "When a ruling is based on conflicting testimony, we will not disturb the court's ruling by reweighing the evidence." *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, 363, ¶ 25 (App. 2013), *vacated in part by* 236 Ariz. 410, 415, ¶ 25 (2014).

¶9        Hargrave first argues that Schumacher's evidence "lacks foundational support." She objects to Schumacher's "rule of thumb" for measuring damages at one percent of the Property's sale price, which she describes as "unsupported" because Schumacher did not provide an expert opinion or affidavit "offering any opinion . . . as to the value of the property." But that argument ignores that Hargrave, too, offered no alternative valuation method, nor expert opinions or affidavits, and no comparable property valuations for the court's consideration. Hargrave simply argued the property had no rental value based on its poor condition. In the end, the court determined fair market rent based on the only valuation method presented in the briefing. We will not second-guess the superior court's resolution of competing evidence on appeal. *See id.*

¶10        Hargrave also argues that "Zillow itself states it cannot be relied upon in determining valuation." More accurately, in the exhibit provided by Schumacher, Zillow "said . . . it couldn't accurately predict *future home prices*." (Emphasis added.) There was no disclaimer regarding reliance on current valuations. Moreover, Schumacher relied on actual

---

For that reason, the court's omission of finality language was not error. *See id.*

listings of comparable homes nearby, rather than Zillow's algorithm utilized for determining home values. *See CSA 13-101 Loop, LLC*, 233 Ariz. at 363, ¶ 26 (affirming reliance on "comparable sales of nearby properties").

**¶11** Hargrave also suggests that Schumacher's evidence is irrelevant because he purchased the Property at a trustee's sale. Not so. First, Schumacher is entitled to three month's fair-market rent because Hargrave failed to timely vacate the Property. *See Montano*, 250 Ariz. at 404–05, ¶ 9; *see also Curtis v. Morris*, 186 Ariz. 534, 535 (1996) (framing occupant "remain[ing] in possession of property after termination of his interest under a deed of trust [a]s a tenant at will or sufferance" under A.R.S. § 12-1173). Second, Hargrave's emphasis on valuation in a trustee's sale is misplaced. She cites case law for the propositions that "'fair market value' presumes market conditions that [we] . . . do not obtain in the context of a forced sale," *In re Krohn*, 203 Ariz. 205, 211, ¶ 27 (2002) (citation omitted), and forced sale prices "should not be given much weight" when determining fair market value, *see CSA 13-101 Loop, LLC*, 233 Ariz. at 363, ¶ 26. But even though courts may encounter "difficulty when attempting to determine fair market value in the context of a [trustee's sale,]" it "does not mean the courts should or could avoid the problem." *Krohn*, 203 Ariz. at 211–12, ¶¶ 27–28.

**¶12** Furthermore, a court's inquiry into fair market value when awarding damages is distinguishable from that resolving a deficiency following a trustee's sale. In *Krohn* and *CSA 13-101 Loop, LLC*, courts were concerned with how fair market valuation restricts *lenders* and protects deed-of-trust *borrowers*, who lack the right of redemption available in judicial foreclosures. *See Krohn*, 203 Ariz. at 208–09, 212, ¶¶ 8–11, 28 ("[T]he risk of a below-market sale price belong[s] with the [lender].”); *CSA 13-101 Loop, LLC*, 236 Ariz. at 412–15, ¶¶ 9–17, 24 (discussing policy reasons for barring prospective waiver of fair market valuation).

**¶13** In calculating the fair market rent, the court was within its discretion to consider the only evidence presented on the home's value: (1) Schumacher's $30,000 estimate based on his 1% rule of thumb and five Zillow listings illustrating comparable properties' rental rates, and (2) Hargrave's request that the court ascribe "a zero value" as the fair market rental rate. We will sustain "a result anywhere between the highest and lowest estimate which may be arrived at by using the various factors appearing in the testimony in any combination which is reasonable." *CSA 13-101 Loop, LLC*, 233 Ariz. at 362–63, ¶ 25 (citation and quotation omitted).

**¶14** Hargrave next argues that Schumacher "fail[ed] to . . . refute" her evidence "*specifically relating* to the [P]roperty." She claims the evidence Schumacher submitted ignored "the state of disrepair of [the Property]" or "the cost to repair [it]." But the estimate tendered by Schumacher specifically considered that the Property "may have some defects in need of repair." And although Hargrave claims to have submitted "affidavits on value and repair costs and the like," the record lacks any such documentation. Rather, Hargrave offered a short list and photos "of hazardous conditions/items of repair," and argued "there are numerous hazardous conditions . . . that simply preclude any type of residential lease as improper or illegal." This evidence does not compel a "zero value," given Schumacher's competing valuation and Hargrave's ongoing occupancy. *See id.* at 364, ¶ 29 (declining to reweigh competing evidence on appeal because "[s]ubstantial evidence support[ed] the [superior] court's fair market value determination").

**¶15** Beyond that, the court determined a fair market rental value for the property at $20,000 per month, $10,000 less than Schumacher's estimate yet more than Hargrave's preferred "zero value." This middle-ground valuation reflects that the court did consider the Property's condition and decreased the fair market rental rate accordingly. Given that reasonable evidence supports the court's valuation, we will not disturb it here.[4] *See id.* at 363–64, ¶ 25.

**¶16** That said, as raised by both parties on appeal, the court's judgment contains an arithmetic error. The court awarded fair market rent of "$62,000 (93 days rent at $20,000 per month)," plus $423 in costs and $2,670 in attorney's fees. These amounts total $65,093.00, but the court erroneously calculated a "total judgment of $75,093.00." The parties agree that the correct damage amount is $65,093.00, and we reduce the award amount accordingly.

---

[4] Hargrave argues the court's analysis was "a hollow shell." We disagree. In agreeing to a streamlined procedure and participating as evidenced by submission of photos and a list of "hazard and repair items," she agreed to the procedure and cannot now challenge the decision because she disagrees with the outcome. *Cf. CSA 13-101 Loop, LLC*, 233 Ariz. at 363, ¶ 26 (resolving valuation after evidentiary hearing in detailed minute entry that addressed witness testimony and three appraisal reports with supporting evidence).

## CONCLUSION

**¶17** For these reasons, we affirm the court's ruling but decrease the money judgment to $65,093.00. Schumacher requests his attorney's fees and costs under ARCAP 21. As the prevailing party, Schumacher is entitled to his taxable costs upon compliance with ARCAP 21. But because he cited no substantive basis for awarding attorney's fees, we decline to award them. *See* ARCAP 21(a)(2); *see also Bed Mart, Inc. v. Kelley*, 202 Ariz. 370, 375, ¶ 24 (App. 2002).



AMY M. WOOD • Clerk of the Court
FILED: AA