[Civil No. 2299. Filed October 17, 1925.]

[239 Pac. 1028.]

CITIZENS STATE BANK, a Corporation, Appellant, v. NANNIE M. McROBERTS, Appellee.

1. EXECUTION—SHERIFF'S DEED IN EXECUTION OF JUDGMENT, FORECLOSING ATTACHMENT ON ALL ATTACHED PROPERTY, CANNOT BE CANCELED BECAUSE OF EXCESSIVE LEVY.—Sheriff's deed of property, sold in execution of judgment foreclosing attachment, which was directly before court, on all attached property, cannot be canceled because of. excessive levy, officer having no discretion as in case of open execution.

2. JUDGMENT—MATTERS DONE OR OMITTED BEFORE JUDGMENT CANNOT BE QUESTIONED IN ACTION TO SET ASIDE SHERIFF'S DEED OF PROPERTY SOLD UNDER EXECUTION.—All matters in issue, or which could have been put in issue, in action on note, are conclusively settled by judgment, and nothing done or omitted before judgment can be questioned in action to set aside sheriff's deed of property sold under execution.

3. EXECUTION—INEXPERIENCED WOMAN, SIGNING NOTE AS ACCOMMODATION MAKER, HELD ENTITLED TO RELY ON PRINCIPAL AND PAYEE TO ADVISE HER OF PRINCIPAL'S DEFAULT BEFORE LEVYING ON AND SELLING HER PROPERTY UNDER ATTACHMENT AND EXECUTION.—Woman, inexperienced in business and without knowledge of her legal duty, held entitled to expect that one, whose note she signed as accommodation maker, and payee bank or its agents, knowing such fact, would advise her of principal's default and necessity of her paying note, before levying attachment on her property and selling it in execution of judgment of foreclosure.

4. JUDICIAL SALES—DEED WILL NOT BE SET ASIDE MERELY FOR INADEQUACY OF PRICE, UNLESS IT WOULD SHOCK JUDGMENT AND

4. See 16 R. C. L. 95.

CONSCIENCE TO DO OTHERWISE.—Courts are reluctant to set aside deeds of property sold under legal process merely for inadequacy of price, and generally will not do so, unless equity of situation is so appealing that to do otherwise would shock judgment and conscience.

5. EXECUTION—CANCELLATION OF SHERIFF'S DEED HELD WARRANTED BY INADEQUACY OF PRICE AND ATTACHMENT CREDITOR'S FAILURE TO INFORM OWNER OF PRINCIPAL DEBTOR'S DELINQUENCY AND CONTEMPLATED STEPS AGAINST PROPERTY.—Failure of payee bank's agents to inform one, who they knew was only an accommodation maker of note, that principal was delinquent and what steps they contemplated against her property, before right of redemption expired, *held* sufficient, together with fact that property was sold in execution of judgment foreclosing attachment lien for less than five per cent of its average estimated value, to warrant cancellation of sheriff's deed.

---

See (1) 23 **C. J.**, p. 741 (Anno.).   (2) 23 **C. J.**, p. 741 (Anno.); 34 **C. J.**, p. 909.   (3) 23 **C. J.**, p. 740.   (4) 35 **C. J.**, pp. 101, 102. (5) 23 **C. J.**, p. 740.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Dudley W. Windes, Judge. Affirmed.

Mr. Samuel White and Mr. Earl Anderson, for Appellant.

Messrs. Hayes, Stanford, Laney & Allee, for Appellee.

ROSS, J.—The plaintiff, Nannie M. McRoberts, by this suit seeks to have set aside and vacated a sheriff's deed of her property to the defendant bank. The lower court, after hearing the evidence, granted her prayer, and the bank has appealed.

The facts as they appear from the pleadings and evidence are, in substance, as follows: One E. A. Starr, through a course of dealings with the bank, had become its debtor in the sum of $1,000, and in 1915 or 1917 the plaintiff, McRoberts, as an accommodation maker signed his note to the bank for that

amount.   Starr reduced the note to $684.35, and on December 27, 1920, plaintiff signed a renewal to the bank for that amount.   The defendant, through its officers, endeavored to induce Starr and plaintiff to pay note without suit, but, failing of success, on February 18, 1922, instituted suit in the superior court of Maricopa county on the note, which with interest then amounted to $850.   On the same day, a writ of attachment was sued out and levied upon the property of plaintiff (defendant in action on note), the property levied upon being lots 7 and 8 in block 3 of Churchill's addition to the city of Phoenix.   Later both Starr and McRoberts were personally served with summons, but failing to answer the complaint, their default was taken on April 14, 1922, and on August 25, 1922, formal judgment was entered in favor of the bank for the sum of $643.79 and costs taxed at $22.35, and the attachment lien was foreclosed against both lots.   (Pending the bringing of said suit and entry of judgment, Starr had paid on account $200 of $225.) Execution was issued and notice of sale published in the "Buckeye Valley News," a weekly paper published in Buckeye, and on October 20, 1922, the property was sold by the sheriff to the bank for its judgment, costs, and accruing costs amounting to $705.39. A certificate of sale was thereupon given to the bank, and the bank caused it to be recorded in the office of the county recorder of Maricopa county.   Thereafter, on May 17, 1923, the six months' period of redemption having expired, the sheriff issued a deed of the premises to the bank.   This is the deed asked to be set aside, and which was set aside by the lower court.   Eight witnesses testified as to the value of the property sold to satisfy the bank's judgment, their estimates varying from $8,500 to $25,000.   Adding all the estimates and dividing the total by eight, the average value was $15,166; while the average value of plaintiff's witnesses comes to $17,833.

Against the property was a mortgage for $1,000. On one of the lots there was a 13-room lodging-house occupied and managed by plaintiff, McRoberts. The other lot was vacant, except for a small shack on the back end. Starr was execution proof, of which fact defendant bank informed itself before levying attachment on plaintiff's property.

During all these happenings, plaintiff had no actual knowledge that her property had been attached, or that the attachment lien had been foreclosed, or her property advertised thereunder for sale, or sold, until in June, 1923, after the period of redemption had expired, a friend of hers called her over the telephone and asked if she knew the Citizens' State Bank had a deed to her home. It is in evidence and undisputed that, as soon as plaintiff received summons she called Starr and talked it over with him and he told her he thought he could manage it in some way. Later he showed her receipts for payments to the bank for two or three hundred dollars. The bank's attorney, after the note was placed with him for collection, did not take up the matter of its payment with plaintiff for two reasons: (1) Because Starr had asked him not to take it up with her, as it would be embarrassing to him and to her; and (2) because the bank's cashier told him not to take it up with plaintiff, she having told the cashier she did not want to be bothered with the matter as Starr was taking care of it. The efforts of the bank's attorney to collect the note, both before and after suit brought, were entirely with Starr, who in all probability, knew everything that was taking place but did not keep plaintiff informed, except as to the payments he had made after suit was brought.

In addition to the above, plaintiff in her complaint and brief relies upon the excessive levy as another reason why the deed should be canceled. If the execution had been an open one in which the sheriff

could have exercised some discretion, we think this might well be considered, but since the attachment was directly before the court and was by its order foreclosed upon all of the attached property, the officer into whose hands the order of sale, or execution was placed had no other alternative than to sell all of the property; or at least in doing so he was carrying out the mandate of the court.

It is well settled that all matters in issue, or which could have been put in issue, in the action to collect the note were conclusively settled by the judgment in that cause, and nothing done or omitted to be done prior to said judgment can be questioned in this action.   23 Cyc. 1295; *Le Baron* v. *Le Baron,* 23 Ariz. 560, 205 Pac. 910; *Wartman* v. *Pecka,* 8 Ariz. 8, 68 Pac. 534; *Stevens* v. *Wadleigh,* 6 Ariz. 351, 57 Pac. 622.   So that, if plaintiff is to recover in this action, she must stand, not upon the proceedings had in court, but upon extraneous occurrences between Starr and the officers and agents of the bank, and upon the wide discrepancy between the value of the property sold and the amount realized therefrom.

From a study and an analysis of the evidence, we think the plaintiff's ignorance as to what was taking place after she was sued upon the note may be accounted for (1) by her reliance on the primary debtor, Starr, to take care of his obligation to the bank, or (2) by her inexperience in business and lack of knowledge of her legal duty, or (3) by the tacit understanding between the bank and Starr after suit was brought not to communicate further with plaintiff about the matter, or all three of these combined.   It may be that neither of the first two, nor both, would afford a sufficient excuse for her negligence or want of knowledge, but that does not signify that they should not be considered in connection with the third reason for her laxity and in explanation thereof.   The fact

that she had signed this accommodation paper with Starr is sufficient evidence that she was on friendly terms with him and had confidence in his integrity and truthfulness. She had a right to expect that he would keep her informed from time to time as to what was happening; also, that the bank or its agents, knowing that she had signed the note as an accommodation maker, would not neglect to keep her advised of Starr's failure to pay the note, or of the necessity of her doing so, before adopting the harsh method it did pursue.

Knowing the high character of the men handling the matter for the bank, we cannot ascribe to them any evil or dishonorable purpose in pursuing the course they did, but whatever the purpose, whether altruistic or sinister, the result is the same to the plaintiff. It may be Starr's motive was to postpone, as long as he could, the evil day when he would be compelled to acknowledge the shame of allowing his friend to be mulcted for his debt, and it may be that plaintiff had shown such indifference to her obligation to the bank as to arouse the resentment of its officers and agents, but even so it would not justify the ominous silence pending the suit and the subsequent proceeding, adapted, as it was, to lull her into a feeling of security and confidence.

Now, it must be admitted that the price realized for the property was grossly inadequate—less than five per cent of its average estimated value. We know the courts are reluctant to set aside deeds of property, sold under legal process, merely for inadequacy of price, and justly so. Generally speaking, they will not do so, unless the equity of the situation is so appealing as that to do otherwise would shock the judgment and the conscience. This court, in *McCoy* v. *Brooks,* 9 Ariz. 157, 80 Pac. 365, adopted the language of the Supreme Court of the United States in

*Graffam* v. *Burgess,* 117 U. S. 180, 29 L. Ed. 839, 6 Sup. Ct. Rep. 686, as stating the rule for this jurisdiction. In that case it was said:

"From the cases here cited we may draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

In view of the fact that plaintiff had never denied her liability on note but always admitted it, and only neglected to take it up because of the assurance of the primary debtor that he would endeavor to pay it, and the bank's agents having full knowledge that she was only an accommodation maker, we think in fairness such agents should have seen her personally and told her, not only of Starr's delinquency, but what steps they contemplated taking against her property; or, somewhere along the line and before the right of redemption expired, they should have informed her of the situation. In failing to impart such information to plaintiff, and in instructing the bank's attorney not to do so, they not only took an undue advantage of her, but pursued a course well calculated to mislead and surprise her. This circumstance, in connection with the great disparity of price realized to the value of the property, it would seem is amply sufficient reason to cancel the deed.

In the Graffam case, *supra,* the plaintiff was a woman seeking to recover her home, sold and deeded under legal process without her knowledge, and in the court's opinion is another statement peculiarly

fitting to the facts here, and for that reason we quote it:

"It is a principle of law, as well as of natural justice, that greater consideration and care are due to persons known to be unable to take care of themselves, than to those who are fully able to do so. The driver of a team, seeing a child, or a woman, or a person of known feeble intellect, in the street, is bound to exercise greater care and diligence to avoid doing them harm, than would be obligatory if it was a grown and capable man. In dealing with a man, whose rights, without his knowledge, but which by due diligence he might know, are passing away by lapse of time into another's hands, the latter may, perhaps, justify himself in the eye of the law, although not in conscience, in preserving a wary and crafty silence, so as to put his victim off his guard and bring him into his own power, while he would be perfectly inexcusable in taking such advantage of a woman, unskilled in business, and unused to the stratagems which are sometimes resorted to by unscrupulous persons."

Before this suit was brought, plaintiff tendered the bank the amount of its judgment, costs, accruing costs, and penalties, and requested that it give back to her her property; and, upon bringing this suit, that tender was renewed and has been continued ever since. Under the circumstances, it seems to us the bank should have accepted such tender and reconveyed to plaintiff her property; and, failing to do so voluntarily, the equity of the situation requires that the deed be canceled.

Accordingly, the judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.