549 P.2d 585

**Jan WIESEL, an unmarried man, Appellant,**

**v.**

**Homer ASHCRAFT and Ramona D. Ashcraft, husband and wife, R. Mark Woodruff and Kathryn C. Woodruff, husband and wife, Appellees.**

**No. 2 CA–CIV 2077.**

Court of Appeals of Arizona, Division 2.

May 12, 1976.

Rehearing Denied June 9, 1976.

Review Denied July 13, 1976.

Newkirk & Beren, P. C. by Peter D. Beren, Tucson, for appellant.

Cusick, Watkins, Stewart & Harris by Donald R. Ellermann, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

Appellant Wiesel filed a complaint in the trial court to set aside the sheriff's sale of his home to appellees. We believe the court below acted correctly when it entered summary judgment for appellees and, therefore, we affirm.

To determine if there is a genuine issue as to any material facts, we must resolve all inferences to be drawn from the evidence in favor of appellant. Rule 56(c), Arizona Rules of Civil Procedure. *Dollar A Day Rent a Car Systems, Inc. v. Mountain States Tel. & Tel. Co.,* 22 Ariz.App. 270, 526 P.2d 1068 (1974). On January 30, 1969, Robert N. Dombrowski and Sandra L. Dombrowski, purchased the real property involved herein, 8951 East Baker Street, Tucson, Arizona, and executed a certain mortgage agreement with Western American Mortgage Company. The mortgage was assigned to the National Savings Bank of the City of Albany on March 4, 1969. On June 30, 1969, Wiesel and his then wife, Betty E. Wiesel, purchased the property from the Dombrowskis and assumed the mortgage agreement. Wiesel made all his mortgage payments to Western American and appellee, Homer Ashcraft, the collection manager for Western American, personally handled Wiesel's collection account as an employee of Western American. Appellee, Mark Woodruff was a licensed real estate salesman employed by Western American as the manager of its Tucson office during the period of time Wiesel was making payments through Western American to the National Savings

Bank of the City of Albany, the mortgagee. Western American by and through Ashcraft collected from Wiesel the insurance and taxes due on the subject real property and with Wiesel's funds paid the taxes and insurance.

On July 22, 1972, Wiesel was divorced from his wife and pursuant to the terms of the divorce decree, received a quitclaim deed from his wife dated July 26, 1972. Wiesel defaulted in the payments due under the mortgage and Ashcraft sent a licensed real estate salesman, Robert Ewing, to Wiesel's residence at Wiesel's request to discuss the sale of the property involved. Wiesel did not correct the default and a mortgage foreclosure complaint was filed in the Superior Court of Maricopa County. Wiesel was served with process but did not answer. A default judgment was entered in favor of National Savings Bank of the City of Albany and against Wiesel, and pursuant to the terms of the judgment, the real property was sold at a sheriff's sale on April 30, 1974. Ashcraft and Woodruff purchased the property at the sheriff's sale for $20,501.54, one dollar more than the bid made by the National Savings Bank of the City of Albany.[1] It is undisputed that the real property has a fair market value of $45,000. Wiesel did not redeem the property within the six-month statutory redemption period and on November 1, 1974, the Pima County Sheriff executed a deed conveying the real property to Ashcraft and Woodruff.

Appellant claims seven points should have weathered the attack of summary judgment and carried the case to the trier of fact. His claims are:

1. A showing that the purchasers paid only 45% of the fair market value of the property at the sheriff's sale was sufficient to allow the case to go to the trier of fact for final determination.

2. A showing that the purchasers at the sheriff's sale paid only 45% of the fair market value of the property was sufficient to allow the case to go to the trier of fact for final determination when it was shown that the purchasers were the collection manager and the officer manager of the mortgage company acting as the intermediary between the mortgagor and the mortgagee of the property being sold.

3. The trial court erred in granting the motion for summary judgment because the question of what relationship existed between Ashcraft and real estate salesman Robert Ewing was a genuine issue as to a material fact.

4. The question of whether an agency relationship existed between Wiesel and Ashcraft and Woodruff was a question of fact.

5. The trial court erred in granting appellees' motion for summary judgment because the question of whether there was any mistake, accident, surprise, misconduct, fraud, irregularity, undue advantage or unfairness, constituted a genuine issue as to a material fact.

6. The trial court erred in granting appellees' motion for summary judgment because the question of whether the sales price at the sheriff's sale was inadequate constituted a genuine material factual issue.

7. The record establishes that Wiesel was entitled to a presumption of fraud.

 It is well-settled in Arizona that an execution sale may be set aside in the court which issued the process or in an independent action in a court possessing equitable jurisdiction. *Nussbaumer v. Superior Court In and For County of Yuma,* 107 Ariz. 504, 489 P.2d 843 (1971); *Redman v. White,* 85 Ariz. 82, 331 P.2d 1096 (1958); see also, 33 C.J.S. Executions §§ 237 and 238. As pointed out in *Nussbaumer,* citing *Johnson v. Jefferson Standard Life Insurance Co.,* 5 Ariz.App. 587, 429 P.2d 474 (1967), the power of a court to set aside an execution sale naturally arises from the inherent power to control its own process. The motion to set aside

---

1. The bank's bid was in the amount of its judgment.

the sale is addressed to the sound discretion of the court but, this discretion is not unlimited. In exercising its discretion, the court must base its decision on the pertinent principles of law or equity applicable to the facts and circumstances of the case. *Nussbaumer, supra.*

Since the case of *McCoy v. Brooks,* 9 Ariz. 157, 80 P. 365 (1905) the general rule in Arizona dealing with vacation of execution sales because of inadequate bids is that mere inadequacy of price, where the parties stand on an equal footing and there are no confidential relations between them, is not, in and of itself, sufficient to authorize vacation of the sale unless the inadequacy is so gross as to be proof of fraud or shocks the conscience of the court. *Nussbaumer, supra; Smith v. Arizona Engineering Co.,* 21 Ariz. 624, 193 P. 303 (1920).

Appellant's first argument is that the price paid was, as a matter of law, so inadequate that the conscience of the court should have been shocked. Arizona cases are not in support of this view. In *McCoy v. Brooks, supra,* shares of stock valued at $52,000 were sold for $350. In *Citizens' State Bank v. McRoberts,* 29 Ariz. 173, 239 P. 1028 (1925), $17,000 worth of property was sold for about $700. In *Johnson v. Jefferson Standard Life Insurance Co., supra,* property worth $73,000 was sold for $5,000. The disparity between the value and the purchase price paid in those cases was so great as to shock the conscience of the court.

However, in the instance case, 45% of the agreed value of the property was paid. The purchase price was one dollar in excess of the amount of the foreclosure judgment. We must note at this point that in the cases cited by appellant, where the disparity of price was great, the court still considered other circumstances to find support for overturning the execution bid. In *McCoy v. Brooks, supra,* there were sale irregularities. In *Citizens' State Bank v. McRoberts, supra,* the accommoda-

tion maker on a note was not informed of the delinquency of the note prior to the running of the redemption period. And in *Blasingame v. Wallace,* 32 Ariz. 580, 261 P. 42 (1927), both irregularities and disparity of price were present, the property valued at $15,000 being sold for $597. In *Johnson v. Jefferson Standard Life Insurance Co., supra,* a mortgagee obtained a foreclosure judgment of $56,228 on property worth $73,000. There, however, the mortgagee was eight minutes late for the sheriff's sale and another judgment creditor bid $5,000 which was accepted by the sheriff. The mortgagee was prepared to bid the amount of its judgment but the sheriff said the property was already sold. The inadequacy of the $5,000 as against $73,000, coupled with the additional facts, were sufficient to set aside that sale.

Appellant cites the case of *Smith v. Arizona Engineering Co., supra,* for the proposition that inadequacy of the purchase price may be, in and of itself, sufficient reason to justify setting aside the sheriff's sale. The *Smith* case involved the sale of 248,750 shares of stock for the sum of $558.47, the amount of the judgment executed upon. Although the court in *Smith* did state the general rule of inadequacy of price, the court confirmed the sale in question. And in the case of *McCoy v. Brooks, supra,* wherein 347,000 shares of stock valued at $52,000 were sold for $350 it was held that the sheriff's sale failed to comply with A.R.S. Sec. 12–1622(B) which provides that only so much of the personal property as is necessary to satisfy the judgment shall be sold.

Appellant's remaining six points are devoted to attempting to establish the necessary circumstances which, when coupled with inadequacy of price, would give rise to a question of material fact as to the propriety of upholding the sheriff's sale. We believe he has failed on this score. He claims that the fact that the purchasers at the sale were employees of

the mortgage-servicing company was sufficient to allow the case to go to the trier of fact. Also, that the parties did not stand on an equal footing as required by *McCoy v. Brooks,* supra. Ashcraft had been in the real estate business for approximately five years as a collection agent for Western American while Woodruff, a licensed real estate broker, had been in the real estate business for twenty-seven years. According to appellant, he had no experience in the real estate business and therefore the record clearly establishes that the parties were not on an equal footing. We believe the parties were on an equal footing in regard to the property in that neither party had an advantage by knowing information unknown to the other party. Here, appellant admits that he was legally served with process and did not answer the foreclosure complaint served upon him, which complaint was clearly labeled "Foreclosure Complaint". He admits his default on the note and mortgage, as well as the regularity of the foreclosure proceedings and the sheriff's sale. We cannot say that because Ashcraft and Woodruff may have had an educational and business experience advantage in real estate matters the sale should be void. That would put all mortgages who bid in the amount of their judgment in the position of having the sales vacated after the redemption period merely because they were in a superior position business-wise.

We find no merit in appellant's reliance on other facts which he maintains placed Ashcraft and Woodruff in a superior bargaining position. He claims:

"1. They had possession of all the business records concerning the real property involved including an appraisal."

All the parties involved had access to the business records and certainly Wiesel knew what his mortgage was and how much he was in default. As for the appraisal, Wiesel admitted that "appraisal"

was merely a figure inserted in a tentative agreement between himself and Robert Ewing, who was sent by Ashcraft to Wiesel's residence to discuss the possible sale of the residence. There is nothing suspicious about this circumstance.

"2. Ashcraft had numerous opportunities to examine the property involved."

This fact would not put Ashcraft in a superior position.

"3. Woodruff had an opportunity to examine the property while a guest of Wiesel."

Neither does this show a superior bargaining position.

"4. When Ashcraft and Woodruff visited the subject property, they were acting in their official capacity as agents of Western American."

This makes no difference as, again, the parties remained on an equal footing.

"5. Any communication between Wiesel and Ashcraft and Woodruff were made by Wiesel in confidence."

Wiesel complains of disclosures consisting of the balance due on the mortgage, the fact that he had been divorced, and the fact that he was suffering emotionally. We cannot say that those disclosures consisted of a breach of any confidential relationship. The fact that there was a balance due on the mortgage as well as the fact that appellant had been divorced were matters of public record, and the fact that plaintiff was suffering emotionally could well be implied from the fact that he was delinquent in his mortgage payments.

"6. Wiesel told Ashcraft that he was divorced, depressed and out of work."

We cannot see that these disclosures gave appellees any unfair advantage over appellant in this matter.

"7. Wiesel discussed with Ashcraft the value of the property."

Again both parties were cognizant of the information.

"8. Ashcraft and Woodruff knew that Wiesel had made substantial improvements to the real property during the period of time that Wiesel was in possession of the property."

Again, there is nothing to show a superior bargaining position.

■ That the purchasers were employees of the mortgage-servicing agency does not make any difference, since there were no irregularities involved at the sheriff's sale. The parties remained in an equal bargaining position and the fact of appellees' employment is not sufficient as a matter of law to withstand an attack by summary judgment.

■ Appellant next questions whether the relationship between Ashcraft and Ewing raised a material issue. He claimed that Ashcraft sent Ewing, a licensed real estate saleman, to the residence to discuss with him the possible sale of the house and Ewing then reported back to Ashcraft. This visit by Ewing, according to him, may have been used by Ashcraft for his own advantage. Appellant fails to allege how this could have been advantageous and admits that he was involved in the discussion with Ewing and together they arrived at the figure of $40,000 as the possible valuation of the house. We cannot see how any information acquired by Ewing during his visit, could have been used to create an unfair advantage for Ashcraft and Woodruff. Even assuming an agency relationship between Ashcraft and Ewing, there is no allegation of any impropriety on the part of Ewing which could be imputed to appellees. In fact, the record shows that Ewing attempted to convince appellant to sell his property in order to liquidate his equity. If appellant had followed Ewing's advice, appellees would not have been in a position to purchase the property at the sheriff's sale.

■ Appellant's least meritorious contention is his allegation that an agency relationship existed between him and the appellees thus raising a factual issue as to breach of a fiduciary relationship. Under Arizona law, agency may be proven in four distinct ways; namely, by contract, by facts which raise the implication of agency, by ratification and by estoppel. *Daru v. Martin*, 89 Ariz. 373, 363 P.2d 61 (1961). Western American Mortgage Company never procured the mortgage loan for appellant, but rather procured it for the Dombrowskis. Western American, by and through its agents, was acting as the agent for the National Savings Bank of the City of Albany when it collected the mortgage, taxes, and insurance payments in Wiesel's home. There was no showing made to support a theory that Western American was the agent of Wiesel. Western American was merely acting as a conduit of the funds being paid by Wiesel to Western American's principal, the National Savings Bank of the City of Albany. The collection agent certainly was not the agent of the debtor.

■ Appellant claims there was a factual issue with regard to mistake, accident, surprise, misconduct, fraud, irregularity, undue advantage or unfairness associated with the sheriff's sale. Those are the factors established in *McCoy v. Brooks,* supra, as well as in *Graffam v. Burgess,* 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886) upon which a voidance of the sale can be based. Appellant's entire claim is based on the fact that employees of the mortgage-servicing agency purchased the property rather than on the form of the judgment entered or the sheriff's sale itself. He cites *Haymes v. Rogers,* 70 Ariz. 408, 222 P.2d 789 (1950) for the proposition that the question of whether there has been bad faith on the part of an agent is a matter for the trier of fact. However, Woodruff and Ashcraft were not appellant's agents. As to the other factors there is no evidence to support their presence. Appellant claims that he was mistaken that the house could be taken away from him, but admits he was duly served with process in the foreclosure suit. There

is no allegation of any misconduct, fraud or irregularity involved. As for undue advantage or unfairness, we have already discussed and rejected appellant's claim of undue advantage.

The next contention raised is that appellant was entitled to a presumption of fraud. Appellant cites language from *Graffam v. Burgess,* supra, to the effect that great inadequacy of price requires only slight circumstances of unfairness in the conduct of the parties benefited by the sale to raise a presumption of fraud. *Graffam* involved a bill in equity to set aside the sheriff's deed. There, a residence valued in excess of $10,000, furniture in the residence valued at $3,000 and $170 in cash were received at a sheriff's sale after the applicable redemption had run. The sheriff's sale was the result of an execution issued to recover on a judgment of $28.95 for work done in one case and $30 for alleged services in another case. Even though the *Graffam* case was a general execution sale rather than a foreclosure sale, we must note the facts which shocked the conscience of the court. The disparity between the property value (in excess of $13,000) and the sales to satisfy claims which were originally in the amount of $59 is overwhelming. In addition, the court was satisfied that the homeowner was unaware of the position in which her property stood and found that *Graffam* knew this, endeavored to keep her so, and took an inequitable advantage of her ignorance to get possession of her property and to get her "in his power". The court found that Graffam kept up a regular corps of spies to watch her movements while she was expending money for property repairs, in order to find the opportune time, when she was absent, to take posses-

sion of her home; and that he availed himself of this opportunity to take possession and removed all her furniture and chattels, even her clothing and private papers, virtually turning her into the streets. The whole situation was riddled with such duplicity and fraud that the court found that Graffam evidently conceived the design of getting the property for a mere nominal consideration and followed a course calculated to lull instead of exciting any suspicion of the real danger in which the complainant stood. The court said "if this is not fraud, we should have great difficulty in defining what fraud is." 117 U.S. at 189, 6 S.Ct. at 691.

We find no acts here which would give rise to a presumption of fraud. All the alleged "misconduct", as we have discussed, did not put appellees in a more favorable bargaining position in regard to the piece of property. The only other circumstance is the fact that the property was sold for the amount of the outstanding judgment plus one dollar to employees of the mortgage-servicing agency. This fact when coupled with the low bid at the sheriff's sale does not create a material issue of fact as to the inadequacy of the purchase price. As our Supreme Court has said:

"It is the general policy of the law to sustain judicial and execution sales whenever it can be done without violating principle or doing injustice." *Young Mines Co., Limited v. Sevringhaus,* 38 Ariz. 160, 298 P. 628, 629 (1931).

Affirmed.

KRUCKER and HATHAWAY, JJ., concurring.