The Merchants Bank v. Furey, No. 67-4-11 Ancv (Toor, J., Sept. 4, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
ADDISON UNIT
CIVIL DIVISION

| | |
|---|---|
| THE MERCHNATS BANK<br> Plaintiff<br><br>v.<br><br>ANNE M. FUREY, et al.,<br> Defendant | Docket No. 67-4-11 Ancv |

RULING ON MOTION TO CONFIRM SALE

This is a foreclosure case in which defendant Anne Furey opposes confirmation of the sale.[1] An evidentiary hearing was held on August 30. The bank was represented by Cynthia Amrhein, Esq.; Furey was represented by James Swift, Esq.

Findings of Fact

The key facts established by the evidence or stipulations of the parties are these. Furey, who is ninety-four years old and resides out of state, obtained a loan form Merchants Bank in connection with a mortgage on a camp in Lincoln. In 2009, she stopped paying her mortgage. In 2011, after other efforts to resolve the matter, the bank initiated this foreclosure action. On June 5, in compliance with the court's foreclosure decree, the bank held a public auction run by the Thomas Hirchak Company. There were seven registered bidders and the property sold at $95,000 to Chris and Trixie Zeno. The Zenos did not know any of the other bidders.

Before the sale, the Hirchak Company advertised it on line, both locally and on national auction websites, and in the Burlington Free Press and some other Vermont papers. They also had an open house in advance of the sale. The marketing generated quite a bit of interest. In

---

[1] At the hearing, Furey's counsel stated that Furey does not challenge the sale itself, only the entry of a deficiency judgment. However, the motion filed pro se did oppose confirmation as well. In any case, the court must analyze the sale itself to determine whether a deficiency judgment is appropriate.

addition, all bidders were able to go inside and inspect the property in advance of the bidding on the day of sale. This is in contrast to many judicial sales in which there is little advertising and no opportunity to see the inside of the property.

At the auction, the bidding started at $25,000 and went up in $5,000 increments to $70,000 or $75,000 and then stalled. The auctioneer then took bids in $1,000 increments and the bidding again stalled at $80,000. One of the bidders was Tom McFadden, a manager at the bank. A recess was taken and McFadden called the bank to confer with another manager about the stalled bidding. They had been told by the prior private listing realtor that it was worth something in the low hundreds. Given the stalled bids, and the condition of the property, they decided to bid $94,900. The Zenos then bid $95,000. They did not know that McFadden was with the bank. No one would bid $96,000, so the sale was finalized at $95,000.

The property has been vacant for some time. This past winter when realtors and the bank went to look at it, there were large trees down across the driveway so that it could not be accessed except by foot. It is currently infested with mice, the copper pipes were stolen from the basement, the roof leaks and needs repair, and there are cracks in the foundation.

The property is appraised for taxes at $256,000 and was appraised by the bank on an "exterior only" basis – that is, without any inspection of the inside – over a year ago for $200,000. Furey's expert witness, Nancy Foster of Remax Champlain Valley Properties, a longtime local realtor, testified that based upon comparable sales in Lincoln she valued the property at $150,000 to $160,000 at a "distress sale" such as a foreclosure sale, and $200,000 if sold by a realtor in the normal course. Her opinion was that $95,000 was an unreasonably low sale price. However, she did concede on cross-examination that the value might be reduced if the roof and foundation needed repairs and the pipes were missing from the basement. She also did

2

not take into account any back taxes that might be owed, although she was aware the taxes had not been paid for some period of time. She had not gone into the basement and was not aware that the copper pipes had been stolen. She did not believe the rodent infestation would reduce the value, as she described that as a common condition in Lincoln. Two of the three homes she used as comparables were significantly larger than this property. This one is only about 900 square feet. The other two were 1,680 and over 2000 square feet. This property has much more acreage but it is not usable as it is swampy and it provides little privacy because of the layout of the land. It cannot be subdivided.

The property was actually privately listed with a realtor in 2010 for $299,000 and did not sell. In September of 2011 the asking price was reduced to $205,000 and it still did not sell. Foster declined to list it at all in March of this year when she looked at it, because of the upcoming foreclosure sale.

Since the sale in June, the bank has incurred additional expenses for attorney's fees, past due taxes of almost $20,000, and securing and maintaining the property. The bank has incurred over $18,000 in attorney's fees in this case as a result of ongoing challenges to the foreclosure by Furey. This is significantly higher than the fees associated with typical foreclosure cases. The bank's loan is not federally insured so any amounts not recovered are a loss to the bank.

Conclusions of Law

The foreclosure statute provides that after a sale pursuant to a foreclosure decree the person selling the property "shall . . . file with the court a report on oath of the sale and of his or her doings and the court may confirm the sale or set it aside and order a resale." 12 V.S.A. § 4533. The statute says nothing about what the court is to consider in reviewing sales, or what might constitute grounds for setting aside a sale. Nor is there much in the way of Vermont case

3

law construing this provision. The foreclosure rule also fails to address the basis on which confirmation should or should not be granted. V.R.C.P. 80.1(k).

Courts "in their discretion may reject judicial sales which they determine to be inequitable." Catamount/Infill Springfield, LLC v. UPS Capital Business Credit, No. 2006-296, 2007 WL 5319750, *3 (Vt. March 2007)(mem.)(referring to need for a "procedurally sound sale and a reasonable price"). However, an inadequate price is not a basis for denying confirmation, unless the inadequacy "is so gross as to be proof of fraud or [it] shocks the conscience of the court." Wiesel v. Ashcraft, 549 P. 2d 585, 589 (Ariz. 1976). As another court has explained:

> It is a longstanding rule that inadequacy of price alone is not sufficient to set aside a judicial sale. However, where the inadequacy is gross and is shown to result from any mistake, accident, surprise, fraud, misconduct or irregularity upon the part of either the purchaser or other person connected with the sale, with resulting injustice to the complaining party, equity will act to prevent the wrong result.

Fernandez v. Suburban Coastal Corp., 489 So. 2d 70, 71 (Fla. App. 1986); *see also*, Brown Bark I, LP v. Grant, 897 N.Y.S. 2d 815, 817 (N.Y. App. Div. 2010) ("[A]bsent fraud, collusion, mistake or misconduct, . . . the mere inadequacy of price is an insufficient reason to vacate a sale unless the price is so inadequate as to shock the court's conscience.")(internal citations and alterations omitted).

The applicable Restatement notes that a foreclosure sale price "obtained pursuant to a foreclosure proceeding that is otherwise regularly conducted in compliance with applicable law does not render the foreclosure defective unless the price is grossly inadequate." Restatement (Third) of Property: Mortgages § 8.3 (1997); *see also* Charles C. Marvel, Inadequacy of Price as Basis for Setting Aside Execution or Sheriff's Sale, 5 A.L.R. 4th 794 § 3 ("The courts have universally recognized that the mere inadequacy of price alone obtained at an execution sale provides insufficient reason for setting aside the sale. However, some authorities appear to hold

4

that the sale may be set aside where the price is so grossly inadequate as to shock the judicial conscience or to raise a presumption of fraud.").

What Furey argues here is not that there was fraud or collusion in the sale, or that the sale should not be confirmed – despite arguing that the sale price is low, she apparently does not argue that it is "grossly inadequate." She argues instead that it would be inequitable to allow the bank to recover a deficiency judgment against her for the balance over the sale price. She points to Rule 80.1(j)(2), which provides that if the bank placed the winning bid, the deficiency would be limited to "the difference between the fair market value … and the amount due the [bank] plus the reasonable expenses incurred in making the sale." From this she seems to conclude that the fair market value would be that set by an appraisal rather than the amount bid by the bank. She argues that letting the bank seek a deficiency when they were outbid by only $100, and could have won by bidding a bit more, is unfair to her.

The court disagrees. First of all, the court does not agree that the rule means the formal appraisal controls. The rule expressly says the court would determine the fair market value by considering the appraisal "and such other evidence  as may be received," so the bids by others at the sale, and the testimony regarding the value now being lower than the appraisals, would certainly be relevant. The rule does not mean that once a bank bids and gets the property, there can never be a deficiency.

Moreover, Furey certainly could have sold the property sometime before now through a realtor and likely obtained a higher price than $95,000. But once it goes to a foreclosure sale, the price is inevitably going to be lower. "[P]roperties sold pursuant to judicial sales are often sold for substantially below market value." Brown Bark I, L.P. v. Grant, 897 N.Y.S. 2d at 816. The bank is not required to bid on the property and then try again to sell it through a realtor. If that

5

were the law, there would never be any point in having public sales. This was a bona fide sale with no hint of any irregularity, fraud, mistake, or collusion. There is nothing here to suggest that the value was wildly off, given the various repairs needed. The auctioneer did more than is typically done in such sales to generate interest in the property, there were several bidders, and the price was not grossly inadequate. The bank had no obligation to bid more to get the property.

Nor does the court find that it is inequitable to allow a deficiency here due to Furey's old age, which is the other argument she makes.[2] If the bank had acted unfairly in some fashion and Furey had been taken advantage of due to her age, the court would see this differently. Here, however, there is nothing to suggest that. The bank has every right to recover its deficiency judgment. Whether it will ever recover anything on that judgment is another matter, but not one that affects this ruling.

<u>Order</u>

The bank's motion to confirm the sale is granted. Because the parties agreed to address the issue of attorney's fees separately, the court directs the bank to submit a proposed Order of Confirmation for the court's signature that does not contain any attorney's fees.

Dated at Middlebury this 4th day of September, 2012.

_____
Helen M. Toor
Superior Court Judge

---

[2] Furey also argued that she has little income currently, but the court struck her testimony on that issue. The court is willing to assume, however, that at 94 years old and given the fact that she has let this property go into foreclosure, she is unlikely to have much of an income stream.