IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

WINDROSE ESTATES HOMEOWNERS ASSOCIATION,
AN ARIZONA NON-PROFIT CORPORATION,
*Plaintiff/Appellee,*

*v.*

JUSTIN T. WRIGHT, AN UNMARRIED MAN,
*Defendant/Appellant,*

---

JUSTIN T. WRIGHT, AN UNMARRIED MAN,
*Plaintiff/Appellee,*

*v.*

SUNSTATE ACQUISITIONS, LLC, AN ARIZONA LIMITED LIABILITY COMPANY;
SV 1, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,
*Defendants/Appellants.*

---

Nos. 2 CA-CV 2024-0074 and
2 CA-CV 2025-0058 (Consolidated)
Filed December 15, 2025

---

Appeal from the Superior Court in Maricopa County
Nos. CV2022090201 and CV2023015900
The Honorable Brian D. Kaiser, Judge Pro Tempore
The Honorable Timothy J. Ryan, Judge

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**

---

COUNSEL

May, Potenza, Baran & Gillespie P.C., Phoenix
By Andrew S. Lishko, Trevor J. Wainfeld, and Danika Marzillier
*Counsel for Appellant Justin Wright*

Vial Fotheringham LLP, Mesa
By Christina N. Morgan
*Counsel for Appellee Windrose Estates Homeowners Association*

Law Offices of Kyle A. Kinney PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Appellants Sunstate Acquisitions, LLC and SV 1, LLC*

Maxwell & Morgan Inc., Mesa
By B. Austin Baillio, Charles B. Sellers, and Chad M. Gallacher
*Counsel for Amicus Curiae Arizona Chapter of Community Associations Institute*

---

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge O'Neil concurred.

---

S K L A R, Judge:

¶1　　　We address here a trial court's authority to set aside a foreclosure sale arising out of a homeowners' association lien. The court set aside a sale of Justin Wright's home and quieted title in Wright's favor, finding in part that the foreclosure sale price was "grossly inadequate." We conclude that the court erred in doing so. Although courts generally have common-law powers to set aside foreclosure sales due to a grossly inadequate price, that power is implicitly abrogated by A.R.S. § 33-1807, the statute governing HOA liens. We likewise conclude that the court improperly set aside the sale on the alternative ground that Wright was "misled or surprised."

¶2　　　We also conclude that in a consolidated action, a different trial court correctly declined to set aside the default judgment against Wright that allowed the foreclosure. In doing so, we reject Wright's arguments concerning the sufficiency of process. The result of our opinion in these consolidated cases is to reinstate the sale. We remand the quiet-title action to the trial court so it can effectuate our opinion.

## BACKGROUND

**¶3**　　　　Wright is a member of the Windrose Estates Homeowners Association.  In January 2022, the association filed a complaint against Wright, alleging that he owed unpaid assessments and other charges totaling $7,463.86.  Among other things, the association sought to foreclose its lien for assessments, which it acquired through Section 33-1807(A).

**¶4**　　　　The association's process server visited Wright's residence seven times.  Although the server saw that the residence was occupied, nobody answered the door.  The association then conducted a search known as a "skip trace," which confirmed that Wright's last known address was at the property.

**¶5**　　　　The association moved for alternative service, which the trial court granted.  The court's order allowed the association to serve Wright by mailing a copy of the summons, complaint, and order to Wright at the property and posting a copy at or near the front door.  The association did so, but Wright did not respond to the complaint.  In September 2022, the court granted default judgment in favor of the association.  The judgment foreclosed the association's lien and authorized the sheriff to sell the property.

**¶6**　　　　That sale occurred in February 2023.  Sunstate Acquisitions, LLC purchased the property for $20,100.  After the six-month redemption period expired, Wright received a "Written Demand of Surrender and Possession" that was posted at the property.  *See* A.R.S. § 12-1282(B).  That led him to take two steps.  First, he moved to set aside the judgment under Rule 60(b) of the Arizona Rules of Civil Procedure, asserting that he had not been served with process.  The trial court denied his motion.  He appealed.

**¶7**　　　　Second, Wright filed a separate complaint against Sunstate as well as SV 1, LLC, which had acquired the property from Sunstate.  He sought a declaration that the foreclosure sale was void and that he was entitled to a judgment quieting title in his favor.  In October 2024, after an evidentiary hearing, the trial court set aside the foreclosure sale and quieted title in Wright's favor.  It found that Wright was misled or surprised, he was not aware of the sale, and the property's sale price was grossly inadequate.  Sunstate and SV 1 appealed.  We consolidated the two cases.

**ADEQUACY OF NOTICE OF FORECLOSURE ACTION**

¶8 Both consolidated appeals raise issues concerning the notice provided to Wright. Wright argues that the trial court in the foreclosure action erred by denying his Rule 60(b) motion. Sunstate and SV 1 argue that the court in the quiet-title action erred by setting aside the sale on the ground that Wright was "misled or surprised."

## I. Rule 60(b) Motion

¶9 In his appeal concerning the Rule 60(b) motion, Wright argues: (1) the trial court should not have granted the association alternative service; (2) the method of service was not reasonably calculated to serve him; and (3) the association did not provide sufficient evidence that it actually served him with process. These issues all turn on the validity of service, which is a legal question of personal jurisdiction that we review de novo. *Ruffino v. Lokosky*, 245 Ariz. 165, ¶ 9 (App. 2018).

### A. Grant of motion for alternative service

¶10 Whether the trial court properly authorized the association to serve Wright by alternative means is governed by Rule 4.1(k) of the Arizona Rules of Civil Procedure. Under that rule, "[i]f a party shows that the means of service provided in Rule 4.1(c) through Rule 4.1(j) are impracticable, the court may . . . order that service may be accomplished in another manner." Ariz. R. Civ. P. 4.1(k). The standard for impracticability requires "something less than the 'due diligence' showing required before service by publication may be utilized." *Blair v. Burgener*, 226 Ariz. 213, ¶ 16 (App. 2010). It requires that service be "extremely difficult or inconvenient," not impossible. *Id.* ¶ 17.

¶11 Wright argues that the association did not show that serving him under Rule 4.1(c) through (j) would be impracticable. In support, he relies primarily on *State ex rel. Department of Economic Security v. Pennel*, in which this court concluded that alternative service had not been justified. 257 Ariz. 558, ¶ 1 (App. 2024). The plaintiff had attempted service at only one of the defendant's two last known current addresses and not his place of work. *Id.* ¶¶ 12-13. *Pennel* is distinguishable. Unlike the defendant there, the skip trace here confirmed that Wright had only a single address, where the association attempted service seven times. And although Wright argues that the association could have attempted service on other days at other times, he does not present evidence that such efforts would have succeeded.

¶12 Wright also argues that the association was required to attempt contact by email or phone before showing impracticability. But Wright has pointed to no case law imposing such a requirement. And in *Bank of New York Mellon v. Dodev*, this court concluded that a plaintiff had presented sufficient evidence of impracticability when it attempted personal service five times but did not try to call the defendant or contact family, neighbors, and co-workers. 246 Ariz. 1, ¶¶ 30-32 (App. 2018). We are not persuaded that this case compels a different outcome than *Dodev*.

¶13 In addition, Wright argues that impracticability required the association to request a waiver of service under Rule 4.1(c). Again, he points to no case law imposing such a requirement. Although Rule 4.1(k) requires that service under Rule 4.1(c) through (j) be impracticable, it does not require plaintiffs to attempt service by each means applicable to the relevant defendant. A general showing of impracticability is sufficient. Even so, nothing in the record suggests that Wright would have been willing to waive service or would have responded to efforts from the association's process server to obtain a waiver.

### B. Sufficiency of method of service

¶14 Next, Wright argues that the alternative methods of service approved by the trial court were not reasonably calculated to provide him notice. The court ordered that service be effectuated by two means—posting at the property and mail. Wright does not plausibly argue that posting the documents at the property was insufficient to provide notice.

¶15 Instead, Wright focuses on the portion of the trial court's order concerning mail. He argues that mail service without delivery confirmation was insufficient, given that the association knew some homeowners were having issues with mail delivery. This argument is inconsistent with Rule 4.1(k)(2), which provides that in addition to any alternative means ordered by the court, "the serving party must mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served." The rule contains no delivery-confirmation requirement. Ariz. R. Civ. P. 4.1(k)(2). The court's order correctly applied the rule. And indeed, Wright testified that he checked his mail once a week, which provided him sufficient time to respond before the default deadline ran. *See* Ariz. R. Civ. P. 12(a), 55(a).

### C. Validity of service

**¶16** Third, Wright argues that the association did not comply with the trial court's alternative-service order because there was no evidence that process was actually delivered to his home. But the association filed a declaration in which its process server attested that he had served Wright by posting on the front entry of the home and by U.S. mail. Nothing more was necessary to comply with the court's order.

**¶17** Wright nevertheless argues that there was no evidence that the process was presented to him in a "format that would indicate its legitimacy or seriousness." He compares the association's method of service with that in *Pennel*, where the plaintiff had served the defendant through a Dropbox link. 257 Ariz. 558, ¶¶ 16-18. But the relevant portion of *Pennel* concerns the plaintiff's failure to include copies of all the relevant documents in that link. *Id.* ¶ 17. Here, the record reflects that the process server included all the documents both in his posting and mailing. We otherwise reject any suggestion that *Pennel* can be read as requiring the documents to be presented in a particular format to indicate their "legitimacy or seriousness." In short, the trial court did not err in denying Wright's motion for Rule 60(b) relief from judgment.

## II. Sale set aside for being misled or surprised

**¶18** Despite the foreclosure court's findings on the service-of-process issues, the trial court in the quiet-title case concluded that Wright was entitled to have the foreclosure sale set aside because he was "misled or surprised." Sunstate and SV 1 challenge that conclusion. Whether an HOA foreclosure sale may be set aside due to the homeowner being "misled or surprised" is a legal issue, which we review de novo. *See Dabrowski v. Bartlett*, 246 Ariz. 504, ¶ 17 (App. 2019). Because foreclosure of HOA liens is governed by Section 33-1807, the issue concerns statutory interpretation, which we also review de novo. *See Cao v. PFP Dorsey Invs., LLC*, 257 Ariz. 109, ¶ 15 (2024).

**¶19** When the text of a statute is clear and unambiguous, we "determine the plain meaning of the words the legislature chose to use, viewed in their broader statutory context." *In re Drummond*, 257 Ariz. 15, ¶ 5 (2024) (quoting *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, ¶ 11 (2023)). Here, Section 33-1807(A) provides, in relevant part, that an HOA's lien "may be foreclosed in the same manner as a mortgage on real estate." *See* A.R.S. §§ 33-721 to 33-730 (judicial foreclosure of real property mortgages).

¶20 We must determine whether this language provides a freestanding right for homeowners to obtain the set-aside of a foreclosure sale when they are misled or surprised—independent of any right to obtain relief under Rule 60(b) or for failure to follow applicable procedures. We do so against the backdrop of case law recognizing that courts have some powers to set aside foreclosure sales. *Homecraft Corp. v. Fimbres*, 119 Ariz. 299, 302 (App. 1978); *Mason v. Wilson*, 116 Ariz. 255, 257 (App. 1977).

¶21 However, absent a grossly inadequate price—an issue we address below—setting aside a sale typically requires an inadequate price plus other irregularities or equitable circumstances. *Fimbres*, 119 Ariz. at 302; *Mason*, 116 Ariz. at 257. The trial court did not rely on those bases in setting aside the sale, nor does Wright meaningfully argue that it should have done so. We therefore need not address whether courts may rely on these bases in setting aside HOA foreclosures. *See Lunney v. State*, 244 Ariz. 170, ¶ 40 (App. 2017).

¶22 Instead, the trial court set aside the sale based on its conclusion that Wright was "misled or surprised." It did not identify any language in Section 33-1807 to support the conclusion that the statute allowed it to set aside the sale on this basis. Nor do we discern any. Likewise, the broader statutory context does not suggest that sales may be set aside simply because the homeowner is misled or surprised. *See Roundtree v. City of Page*, ___ Ariz. ___, ¶ 13, 573 P.3d 65, 69 (2025) ("We interpret statutory . . . provisions not in isolation, but in context with other provisions covering the same subject matter . . . .").

¶23 Rather, the applicable statutes and rules contain detailed notice requirements. A homeowner has record notice of the lien by virtue of the planned community's declaration. § 33-1807(F). Before a collection proceeding from an entity other than the association's agent may begin, the association must send a notice specified by statute. § 33-1807(L). If the association's board seeks to initiate foreclosure, it must also "exercise reasonable efforts to communicate with the member and offer a reasonable payment plan." § 33-1807(A). And as detailed above, Rule 4.1 entitles the homeowner to notice of any foreclosure action. Then, after judgment is entered, Section 12-1621(A)(3) requires that notice of the execution sale be posted in three public places in the county fifteen days or more before the sale and in a newspaper for three weeks before the sale.

¶24 These procedural protections guard against homeowners being misled or surprised by a sale. And as Wright attempted to do through his Rule 60(b) motion, homeowners may exercise any relevant rights to

enforce these procedures. But the procedures' availability reinforces that the statutory scheme includes no unstated, freestanding right to set aside a sale simply because the homeowner was misled or surprised. *See Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (providing that "court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions" (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965))).

**¶25** In arguing to the contrary, Wright points to *Citizens' State Bank v. McRoberts*, 29 Ariz. 173 (1925). In that case, our supreme court affirmed the trial court's decision to set aside a sheriff's sale of the plaintiff's property, in part because the plaintiff was misled or surprised when her home was sold without her knowledge. *Id.* at 179-80. *McRoberts*, however, predates the statutory scheme applicable to HOA liens and foreclosures. *See* 1996 Ariz. Sess. Laws, ch. 236, § 1 (enacting Section 33-1807). Nor does it suggest that being misled or surprised, standing alone, is a sufficient basis for setting aside a sale. Thus, we conclude that Section 33-1807(A) did not permit the trial court to set aside the foreclosure sale simply because Wright was misled or surprised. It erred by doing so.

## GROSSLY INADEQUATE SALE PRICE

**¶26** The quiet-title court's other ground for setting aside the foreclosure sale was that "Sunstate's bid of $20,100 was so grossly inadequate as to shock the conscience because it was less than 20% of the fair market value of the Property." As noted, our case law broadly recognizes that courts may set aside foreclosure sales due to a grossly inadequate price. The buyers argue, though, that Section 33-1807(A) abrogates any such common-law right in the context of HOA foreclosures.

**¶27** This is a matter of first impression for our appellate courts. *But see First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394 (2008) (addressing title-insurance implications following set aside of HOA foreclosure sale for grossly inadequate price, where set aside was not challenged). The issue requires us to engage in statutory interpretation, which is a matter of de novo review. *See Garibay v. Johnson*, 259 Ariz. 248, ¶¶ 17-21 (2025) (applying de novo review in determining whether statute abrogates common-law judicial immunity).

## I. Statutory language and principles concerning abrogation of common law

¶28        We begin with the language of Section 33-1807(A) in effect at the relevant time, and we cite that version despite a subsequent amendment. 2025 Ariz. Sess. Laws, ch. 71, § 1. As with our prior analysis, we must interpret the statute based first on "the plain meaning of the words the legislature chose to use, viewed in their broader statutory context." *Drummond*, 257 Ariz. 15, ¶ 5 (quoting *Columbus Life Ins. Co.*, 255 Ariz. 382, ¶ 11).

¶29        Section 33-1807(A) generally provides HOAs with a lien for assessments. Most relevant here, it sets forth the procedure for foreclosing the lien, as well as minimum thresholds for delinquencies before an HOA may initiate foreclosure. In relevant part, the statute reads:

> The association has a lien on a unit for any assessment levied against that unit from the time the assessment becomes due. The association's lien for assessments . . . may be foreclosed in the same manner as a mortgage on real estate but may be foreclosed only if the owner has been delinquent in the payment of monies secured by the lien . . . for a period of one year or in the amount of $1,200 or more, whichever occurs first, as determined on the date the action is filed.

2019 Ariz. Sess. Laws, ch. 200, § 1. Nothing in this language expressly authorizes courts to evaluate the sale price in determining whether an HOA foreclosure sale may be set aside. Although the statute provides for foreclosures to occur "in the same manner as a mortgage on real estate," it does not expressly extend this language to post-sale challenges. And in the buyers' view, the minimum thresholds of one year or $1,200 of unpaid assessments preclude any "further price scrutiny."

¶30        We agree with Wright, though, that this language does not end our analysis. As we have explained, our case law has long recognized that courts possess some authority to set aside execution sales due to a grossly inadequate price. *See, e.g.*, *Wiesel v. Ashcraft*, 26 Ariz. App. 490, 494-97 (1976); *McCoy v. Brooks*, 9 Ariz. 157, 159-60 (1905). This authority arises from a court's "inherent power to control its own process." *Nussbaumer v. Superior Court*, 107 Ariz. 504, 506 (1971). That power had

applied only to judicial foreclosures until our supreme court in *In re Krohn* extended it to trustee's sales. 203 Ariz. 205, ¶ 38 (2002). In light of *Krohn*, courts may set aside trustee's sales due to a grossly inadequate price if the sale price is under twenty percent of fair market value. *Id*. ¶ 29.

**¶31** From this case law, Wright argues that the trial court here merely applied a longstanding common-law power to set aside the sale due to a grossly inadequate price. In his view, Section 33-1807 does not abrogate that power. Instead, he argues that courts should be authorized to set aside HOA foreclosure sales where the price was less than twenty percent of the homeowner's equity. He derives that threshold from Section 8.3 of the Restatement (Third) of Property: Mortgages, which the court applied in the trustee-sale context in *Krohn*. 203 Ariz. 205, ¶ 38.

**¶32** In support of this argument, Wright points to the principle that "if the common law is to be changed or abrogated by statute, the legislature must do so expressly or by necessary implication." *Garibay*, 259 Ariz. 248, ¶ 19; *see also* A.R.S. § 1-201 ("The common law only so far as it is . . . not repugnant to or inconsistent with the . . . constitution or laws of this state . . . is adopted and shall be the rule of decision in all courts of this state."). Consistent with this rule, our supreme court has written that "[a]bsent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with 'every intendment in favor of consistency with the common law.'" *Pleak v. Entrada Prop. Owners Ass'n*, 207 Ariz. 418, ¶ 12 (2004) (quoting *In re Thelen's Estate*, 9 Ariz. App. 157, 160-61 (1969)). *But see State v. Tunkey*, 254 Ariz. 432, ¶ 32 (2023) (Bolick, J., concurring) (rejecting interpretive methodology of seeking legislative intent).

## II. Case law concerning implied abrogation of common-law rights

**¶33** Assuming that the authority to set aside foreclosure sales derives from common law, we agree with Wright that nothing in Section 33-1807 expressly abrogates that authority. But we must still address whether the statute abrogates it by "necessary implication." As our supreme court explained in *Columbus Life Insurance Co. v. Wilmington Trust, N.A.*, this type of abrogation can occur when the legislature has adopted a "comprehensive statutory scheme" and that scheme "establish[es] exclusive remedies." 255 Ariz. 382, ¶¶ 11-24. *See also AAA Cab Service, Inc. v. Indus. Comm'n*, 213 Ariz. 342, ¶ 4 (App. 2006) (comprehensive statutory scheme concerning workers' compensation "control[s] when that scheme conflicts with common law principles").

¶34        In *Columbus*, the statute at issue governed the contestability of life-insurance policies.  255 Ariz. 382, ¶¶ 12-24 (citing A.R.S. § 20-1204).  The court held that this statute abrogated a common-law rule that rendered policies void where they were held by a third party that lacked an insurable interest.  *Id.*  The statute did so in two ways.  First, it limited the time period in which such policies could be contested.  *Id.* ¶ 15.  Second, it provided only insureds, not insurers, with a remedy where benefits on such a policy are paid.  *Id.*  The court concluded that these provisions implicitly abrogated insurers' common-law right to void the policy, at least outside the statutory contest period, even when it had previously paid proceeds to a third party with no insurable interest.  *Id.* ¶¶ 16-17.  To conclude otherwise, the court reasoned, would "largely eviscerate" the statutory remedy, which required that benefits be paid—an impossibility if the policy were void.  *Id.* ¶ 17.

¶35        By contrast, a statute typically does not abrogate the common law where the statutory remedy does not undermine the common-law remedy.  *See, e.g.*, *State v. Allen*, 253 Ariz. 306, ¶ 68 (2022) (statute concerning admissibility of confessions does not abrogate common-law rule of corpus delicti, which requires corroboration of confessions).  For example, in *Wilks v. Manobianco*, an insurance agent argued that a statute had abrogated a common-law negligence claim for failure to procure the policy requested by the insured.  237 Ariz. 443, ¶ 1 (2015).  The statute permitted insurers to provide insureds with a form allowing them to select certain types of coverage.  *Id.* ¶ 7 (citing A.R.S. § 20-259.01).  The alleged negligence, however, did not involve failure to provide the form.  Instead, it involved failure to procure the coverage the insured requested on the form.  *Id.* ¶ 10.  Because that common-law claim involved conduct not addressed by the statute, the statute did not abrogate the common law.  *Id.* ¶ 11.

### III.    Whether Section 33-1807 impliedly abrogates common-law right to set aside foreclosure sales for grossly inadequate price

¶36        Like the statutory scheme in *Columbus*, Section 33-1807 imposes a comprehensive set of rules concerning the foreclosure remedy available to HOAs.  Whether those rules abrogate the common-law right to set aside foreclosure sales for a grossly inadequate price depends largely on the effectiveness of that statutory remedy if the common-law right remains.  *See Columbus*, 255 Ariz. 382, ¶ 11 ("[W]e view 'the statute as a whole' to 'give meaningful operation to all of its provisions.'" (quoting *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991))).

¶37        Three provisions of Section 33-1807 are especially relevant. First, is the $1,200 or one-year minimum threshold for unpaid assessments

before an HOA may initiate foreclosure. Second, the statute imposes a functional maximum on the amount that can be foreclosed by requiring foreclosure actions to be brought within six years of the assessment becoming due. § 33-1807(G). Six years of assessments often amounts to a small number. For example, Wright's monthly assessment in this case was $145 per month, so six years would total $10,440. Third, the statute subordinates HOA liens to first mortgages and tax liens. § 33-1807(C). Because any foreclosure-sale buyer would take the property subject to those liens, the buyer is incentivized to make a low bid to account for them.

¶38 Given these statutory provisions, HOA foreclosure sales almost necessarily involve low bids, which will frequently be well below twenty percent of the homeowner's equity. Consider an HOA that initiates foreclosure proceedings when the unpaid assessments total $1,200. The total lien amount would likely be higher due to late fees, attorney fees, and other items. But even if the total lien were $3,000, that amount would typically set the floor for bidding by becoming the HOA's credit bid. In this circumstance, a homeowner with little more than $15,000 in equity would have a strong argument to set aside a sale consummated via credit bid for grossly inadequate price. Even if the minimum bid were higher due to larger monthly assessments, an HOA delaying foreclosure, or multiple bidders at the sale, the equity necessary to set aside the sale would typically be low.

¶39 Preserving the common-law right in this context would allow numerous homeowners to set aside foreclosures that comply with the statute. It might also chill HOAs from exercising their statutory rights because a foreclosure could be set aside later. Just as in *Columbus*, the common law would "largely eviscerate" the statutory remedy. 255 Ariz. 382, ¶ 17. For that same reason, this case conceptually differs from *Wilks*, where the statute did not abrogate the common-law negligence claim against the insurance agent. 237 Ariz. 443, ¶¶ 13-14. In *Wilks*, unlike here, the common law and statute could operate independently without one significantly undermining the other.

¶40 Moreover, by positing that gross inadequacy should be measured based on equity, Wright's argument raises practical challenges about compliance with federal law. Under a federal privacy statute, neither foreclosing HOAs nor prospective buyers are entitled to information about the homeowner's equity. *See* 15 U.S.C. § 6802(b)(1) (financial institutions "may not disclose nonpublic personal information to a nonaffiliated third party" without consumer's notice and opportunity to respond). Thus,

neither creditor nor bidder could know with certainty the size of the bid necessary to avoid a grossly inadequate price. They would learn this information only in post-foreclosure litigation. We do not believe we should interpret Section 33-1807(A) as creating the hidden risk that sales may be set aside due to information that is unknowable to HOAs and purchasers, even where the foreclosure otherwise complies with the statute.

¶41        Finally, Wright argues that the monetary minimum is simply a procedural requirement while the right to set aside a sale for a grossly inadequate price is substantive. Procedural laws prescribe mechanisms for enforcing rights and obtaining redress. *Krol v. Indus. Comm'n*, 259 Ariz. 261, ¶ 32 (2025). Substantive laws, by contrast, create, define, and regulate rights. *Id.*

¶42        Parts of Section 33-1807 are procedural, such as the language in Section 33-1807(A) requiring HOA liens to be foreclosed "in the same manner as a mortgage on real estate." But the provisions most relevant to our analysis are substantive, namely, the minimum and maximum foreclosure thresholds, as well as the subordination provision. These provisions define the rights of HOAs and foreclosure buyers. Similarly, any common-law right to set aside the sale is also substantive, as it concerns homeowners' rights. That both rights are substantive lends further support to our conclusion that the statute abrogates the common law. Thus, we interpret Section 33-1807 as abrogating any common-law right to set aside foreclosure sales due to grossly inadequate price. We therefore reverse the trial court's decision to set aside the sale.

## ATTORNEY FEES

¶43        Wright and the association both request an award of attorney fees and costs on appeal. As the prevailing party in the foreclosure action, the association is entitled to recover its taxable costs and attorney fees under Section 7.1 of its Amended and Restated Declaration of Covenants, Conditions, and Restrictions, upon its compliance with Rule 21(b) of the Arizona Rules of Civil Appellate Procedure.

¶44        The buyers, who are the prevailing parties in the quiet-title action, do not request their attorney fees or costs on appeal. However, as prevailing parties, they are entitled to recover their costs upon compliance with Rule 21. *See* A.R.S. § 12-341.

## DISPOSITION

**¶45** We affirm the trial court's order denying Wright's motion for Rule 60(b) relief from judgment in the foreclosure action. We reverse the court's order setting aside the foreclosure sale. We remand to the trial court for any further proceedings necessary to effectuate our opinion.